PEOPLE *v.* PALM.

1. STATUTES—CRIMINAL LAW—HABITUAL OFFENDERS—TITLE—CON-
STITUTIONAL LAW.

An objection that the provision for the punishment of habitual
offenders in the criminal code (Act No. 175, Pub. Acts 1927)
is unconstitutional because its title fails to express such legis-
lative purpose, is without merit, since said provision is ger-
mane to the general purpose of the act as expressed in its title.

2. SAME—EX POST FACTO LEGISLATION.

A provision in the criminal code (Act No. 175, Pub. Acts 1927)
for the punishment of habitual offenders, by providing a man-
datory life sentence upon conviction of fourth felony, does not
offend against article 1, § 10, United States Constitution, for-
bidding the enactment of *ex post facto* legislation, since the
offender, by his own act committed subsequent to the enact-
ment of said statute, brings himself within a class covered
therein.

3. SAME—DISCRETION OF JUDGES IN RESPECT TO SENTENCES STATU-
TORY.

The mandatory provision of the criminal code (section 12,
chap. 9, Act No. 175, Pub. Acts 1927), requiring life sentences
for fourth term offenders, is not objectionable because the trial
court is thereby deprived of exercising discretion in the impo-
sition of sentence, since courts have no discretionary power in
this respect unless it be conferred upon them by law.

4. CRIMINAL LAW—PRELIMINARY EXAMINATION NOT NECESSARY ON
ISSUE OF FORMER CONVICTIONS.

In proceedings under an information under the criminal code
(section 13, chap. 9, Act No. 175, Pub. Acts 1927), alleging
that defendant had been convicted of former offenses, proceed-
ings for a preliminary examination under 3 Comp. Laws 1915,
§ 15767, are in no way involved, since he is not charged with
having committed any crime, but the fact of previous convic-
tions alone is before the court, and the sentence which may be
imposed is dependent upon proof of said fact, which may be
established by competent evidence or by defendant's admission
thereof by his plea of guilty.

5. SAME—WHETHER PLEA OF GUILTY UNDERSTANDINGLY MADE NOT CONSIDERED IN VIEW OF COURT JOURNAL.

> Where the journal of the court, attested by the signature of the trial court, stated that defendant's plea of guilty was voluntarily and understandingly tendered, the Supreme Court cannot say that the provisions of section 13, chap. 9, Act No. 175, Pub. Acts 1927, requiring the trial judge to "inform him of the allegations contained in such information, and of his right to be tried as to the truth thereof according to law, and shall require such offender to say whether he is the same person as charged in such information or not," was not complied with.

6. SAME—WHETHER TWO CONVICTIONS FELONIES NOT CONSIDERED WHERE FOUR OTHER FELONIES ALLEGED.

> Whether defendant's conviction in the Federal court and his first conviction under the local option law of the State, alleged in the information as felonies, were in fact felonies within the meaning of the criminal code (Act No. 175, Pub. Acts 1927), subjecting him, on his plea of guilty, to a mandatory life sentence, need not be considered by the Supreme Court, where four other felonies were alleged.

Error to Ingham; Carr (Leland W.), J. Submitted October 12, 1928. (Docket No. 126, Calendar No. 33,801.) Decided January 7, 1929. Rehearing denied March 29, 1929.

Fred Palm was convicted under the habitual criminal act, and sentenced to imprisonment for life in the State prison at Jackson. Affirmed.

*Edmund E. Shepherd* and *Ford P. Brooks,* for appellant.

*Wilber M. Brucker,* Attorney General, *Harold J. Waples* and *Charles Rubiner,* Assistants Attorney General, and *Barnard Pierce,* Prosecuting Attorney, for the people.

SHARPE, J. Defendant reviews his conviction and sentence to life imprisonment on his plea of guilty by writ of error allowed by this court on his personal petition therefor. All irregularities in the

issuance thereof have been waived by the attorney general.

The sentence was imposed under the mandatory provision of section 12 of chapter 9 of Act No. 175 of the Public Acts of 1927 (the code of criminal procedure), which reads as follows:

"A person who after having been three times convicted within this State, of felonies or attempts to commit felonies, or under the law of any other State, government or country, of crimes which if committed within this State would be felonious, commits a felony within this State, must be sentenced upon conviction of such fourth or subsequent offense, to imprisonment in a State prison for the term of his natural life. Offenders sentenced under this and the last two preceding sections shall not be eligible to parole before the expiration of the minimum term fixed by the sentencing judge at the time of sentence without the written approval of the judge of such court or any judge of such court if the sentencing judge is not then serving. A person to be punishable under this and the last two preceding sections need not have been indicted and convicted as a previous offender in order to receive the increased punishment therein provided, but may be proceeded against as provided in the following section."

Section 13 provides:

"If at any time after conviction and either before or after sentence it shall appear that a person convicted of a felony has previously been convicted of crimes as set forth in any of the three foregoing sections, it shall be the duty of the prosecuting attorney of the county in which such conviction was had to file an information in such cause accusing the said person of such previous convictions. Whereupon the court in which such conviction was had shall cause the said person whether

confined in prison or otherwise, to be brought before it and shall inform him of the allegations contained in such information, and of his right to be tried as to the truth thereof according to law, and shall require such offender to say whether he is the same person as charged in such information or not. If he says he is not the same person, or remains silent, the court shall enter a plea of not guilty, and a jury of twelve jurors shall be empaneled from the petit jurors serving at the then or a following term of said court to determine the issues raised by such information and plea. The accused may waive trial by jury in the manner provided by this act. The usual practice in the trial of criminal cases shall be followed in the empaneling of such jury and the trial of said issue and the prosecuting officer and the accused shall each be allowed five peremptory challenges. If the accused shall plead guilty to such information or if the jury shall return a verdict of guilty, the court shall sentence him to the punishment prescribed in the three preceding sections, as the case may be, and shall vacate the previous sentence, deducting from the new sentence all time actually served on the sentence so vacated if required. Whenever it shall become known to any warden, or prison, probation, parole, or other peace officer that any person charged with or convicted of a felony has been previously convicted within the meaning of the three preceding sections, it shall become his duty forthwith to report the facts to the prosecuting attorney of the county in which such person is charged or was sentenced.''

The information to which defendant pleaded guilty, and on which the sentence of life imprisonment was imposed, charged that before the filing thereof the defendant had been once convicted of burglary and four times of violation of the law prohibiting the manufacture or sale, etc., of intoxicat-

ing liquors in the circuit court for the county of Ingham, in which such information was filed. It also charged that on February 2, 1920, defendant was convicted in the United States district court for the eastern district of Michigan of defacing the lawful currency of the United States.

The journal of the court, attested by the signature of the trial judge, reads as follows:

"The prosecuting attorney of the county of Ingham, having filed his information against the said respondent, alleging and charging that the said respondent has heretofore been convicted of six felonies and the said respondent having been duly arraigned on said information and having pleaded guilty thereto; and on examination by the court it appearing that said plea of guilty was voluntarily and understandingly tendered, and said plea of guilty having been accepted by the court; and having been, on motion of the prosecuting attorney, brought to the bar of the court for sentence, and having there been asked by the court if he had anything to say why judgment should not be pronounced against him, and alleging no reason to the contrary; therefore, it is considered by the court now here, that the said Fred Palm be confined in the State prison at Jackson at hard labor for life from and including this day."

The manner in which the criminal code was prepared, and the purpose of its enactment, was referred to in *People* v. *Lintz,* 244 Mich. 603. The provision for increased sentence when the defendant had been theretofore convicted is not new in this State. Sections 5948 and 5949, 2 Comp. Laws 1857, contained provision therefor, and have been continued in force without change. They appear as sections 15612 and 15613, 3 Comp. Laws 1915. This court has sustained sentences imposed thereunder.

*People* v. *Campbell,* 173 Mich. 381. The mandatory provision in the present law is its chief additional feature.

Such laws evidence a desire on the part of the people of the State to protect themselves from the acts of habitual violators of law. Such persons, by the repeated commissions of felonies, have shown that they are a menace to society, unfit for liberty, and should be deprived thereof. The punishment in such cases is increased because of the apparent persistence in the commission of crime by the person convicted and his indifference to the laws deemed necessary for the protection of the people and their property. Experience teaches that the fear of severe punishment is more likely to rid the State of this type of professional criminals than any effort which may be made looking to their reformation.

The reasoning on which such laws are sustained is very aptly stated in 8 R. C. L. p. 271, as follows:

"An habitual criminal statute is a thing of modern creation, and while there are many rules of law which may seem inconsistent with its purpose and the procedure adopted to compass it, it is nevertheless sound in principle and sustained by reason. Aside from the offender and his victim there is always another party concerned in every crime committed—the State; and it does no violence to any constitutional guaranty for the State to rid itself of depravity when its efforts to reform have failed. The true ground upon which these statutes are sustained is, that the punishment is awarded for the second offense only, and that in determining the amount or nature of the penalty to be inflicted, the legislature may require the courts to take into consideration the persistence of the defendant in his criminal course."

The errors relied on by and on behalf of the defendant will now be considered.

1. *Title to the Act.* Counsel contend that the "purpose of the legislature to define and prescribe punishment" for habitual offenders "is not expressed in the title of said Act." The act is so easily accessible that we refrain from quoting the title in full. It is therein said to be—

"An act to revise, consolidate and codify the laws relating to criminal procedure; * * * to provide for trials of persons complained of or indicted ·for criminal offenses and to provide for the procedure therein; to provide for judgments and sentences of persons convicted of criminal offenses." * * *

In *Attorney General* v. *Hillyer,* 221 Mich. 537, 539, in which the 1917 election law was attacked for the same reason, it was said:

"It would not be possible to embrace in the title the various objects intended to be accomplished in the 25 chapters of the act in question. It is sufficient, as this court said in *Loomis* v. *Rogers,* 197 Mich. 265: 'If provisions in the body of the act not directly mentioned in the title are germane, auxiliary or incidental to that general purpose.' "

See, also, *Mackin* v. *Detroit-Timkin Axle Co.,* 187 Mich. 8; *Loomis* v. *Rogers,* 197 Mich. 265; *People* v. *Gogak,* 205 Mich. 260; *People* v. *Wohlford,* 226 Mich. 166. We find no merit in this contention.

2. *Ex Post Facto Legislation.* It is next insisted that the act violates the constitutional provision (U. S. Const., Art. 1, § 10) forbidding the enactment of *ex post facto* legislation. In 1 Cooley on Constitutional Limitations (8th Ed.), p. 553, it is said:

"And the law is not objectionable as *ex post facto* which, in providing for the punishment of future offenses, authorizes the offender's conduct in the past to be taken into the account, and the punish-

ment to be graduated accordingly. Heavier penalties are often provided by law for a second or any subsequent offense than for the first; and it has not been deemed objectionable that, in providing for such heavier penalties, the prior conviction author- ized to be taken into the account may have taken place before the law was passed. In such case, it is the second or subsequent offense that is punished, not the first.''

The rule thus stated is in harmony with the decisions of this and other courts. *In re Miller,* 110 Mich. 676 (34 L. R. A. 398, 64 Am. St. Rep. 376); *McDonald* v. *Massachusetts,* 180 U. S. 311 (21 Sup. Ct. 389); *Graham* v. *West Virginia,* 224 U. S. 616 (32 Sup. Ct. 583); *Commonwealth* v. *Graves,* 155 Mass. 163 (29 N. E. 579, 16 L. R. A. 256); *Blackburn* v. *State,* 50 Ohio St. 428 (36 N. E. 18); *People* v. *Gowasky,* 244 N. Y. 451 (155 N. E. 737); *Davis* v. *Berry,* 216 Fed. 413. In the case last cited it was aptly said:

''He is not being subjected to the operation for that which was by him done prior to the enactment of the statute, but because he voluntarily brings himself within a class covered by the statute, and he does this subsequent to the enactment of the statute.''

3. *Discretion of Court.* It is urged that the mandatory provision deprives the trial court of exercising a discretion in the imposition of sentence. Under our system of State government, the legislature makes the law, the governor executes it, and the courts construe and enforce it. In *People* v. *Smith,* 94 Mich. 644, 646, this court said:

''Upon the legislature alone is conferred the power to fix the minimum and maximum of the punishment for all crimes.''

The courts have no discretionary power in this respect unless it be conferred upon them by law. Under its mandate, murder in the first degree is punished by life imprisonment. Courts have no inherent power to modify a statute in this respect to meet exceptional cases.

4. *Procedure.* (*a*) Defendant urges that the court had no jurisdiction to pronounce sentence because section 15767, 3 Comp. Laws 1915, had not been complied with. It reads, in part, as follows:

"No information shall be filed against any person for any offense, until such person shall have had a preliminary examination therefor, as provided by law, before a justice of the peace, or other examining magistrate or officer, unless such person shall waive his right to such examination." * * *

The right of a person accused of crime to such an examination has been sedulously guarded by this and other courts. It is, however, in no way involved in the proceedings here had. In the information filed, in which the several former convictions were averred, and to which defendant pleaded guilty, he was not charged with having committed any crime. In it the court was informed of defendant's prior convictions. By his plea of guilty thereto he admitted the truth of the charges made therein. The mandatory sentence was imposed pursuant to the provision therefor, because of such plea. The inquiry presented was not whether the defendant had committed a particular offense. The fact of previous convictions alone is before the court, and the sentence which may be imposed is dependent upon the proof of such fact. It may be established by competent evidence or by the defendant's admission of the truth thereof in his plea of guilty. The affirmative determination reached by the court on

such plea, or by the jury if one is impaneled, is the basis on which the additional punishment is imposed. This question has been squarely passed upon and decided adversely to the claim of the defendant in *Graham* v. *West Virginia, supra; People* v. *Gowasky, supra,* and *State* v. *Zywicki* (Minn.), 221 N. W. 900.

(*b*) It is insisted that defendant was not at any time informed that the proceeding in court was being conducted under the provision in the criminal code under which, if he pleaded guilty, a life sentence was mandatory. The journal from which we have already quoted, states "that said plea of guilty was voluntarily and understandingly tendered," and was "accepted by the court." The statute (§ 13) requires the trial court, when a person so charged is brought before him, to—

"inform him of the allegations contained in such information, and of his right to be tried as to the truth thereof according to law, and shall require such offender to say whether he is the same person as charged in such information or not."

It then provides for a trial by a jury, unless waived, if the accused "says he is not the same person, or remains silent," and if "the accused shall plead guilty to such information or if the jury shall return a verdict of guilty" he shall sentence him to the punishment prescribed.

We cannot on this record say that this statute was not complied with. The record of sentence states that the plea of guilty was made "voluntarily and understandingly." What particularly occurred would doubtless appear in the minutes of the stenographer, and need not necessarily be included in the record of sentence.

5. *Charge of Felonies.* The claim is made that the conviction in the Federal court alleged in the

information was not one of a felony under our State law, and also that defendant's first conviction was for a violation of the local option law then in force in Ingham county, and that such violation was not a felony. As four other felonies were alleged, these claims need not be considered.

No reversible error appearing, the judgment is affirmed.

NORTH, C. J., and FEAD, FELLOWS, WIEST, CLARK, and McDONALD, JJ., concurred. POTTER, J., did not sit.