PEOPLE v. CRANE.

1. CRIMINAL LAW—PLEA OF GUILTY—DURESS.
   Where sentencing judge stated in his opinion on denial of defendant's first motion to withdraw plea of guilty and for new trial that before sentencing defendant the judge had had a conference with defendant at which the judge assured himself that defendant's plea was knowingly and freely made, defendant is shown to have been well-educated, to have had many years' experience with crime and court proceedings, and had implicated his son in the particular crime charged, defendant does not appear to have acted under any undue influence or under compulsion of statement made to police officers who had procured signature of defendant, an ex-convict and not then represented by counsel, on a paper that if he would make a statement regarding his recent crimes, he would be charged with only one crime, that of breaking and entering in the nighttime, first offense (Act No. 328, § 110, Pub. Acts 1931).

2. SAME—ACCEPTANCE OF PLEA OF GUILTY—INVESTIGATION BY JUDGE.
   Where it appears that four weeks after defendant was arrested he was arraigned on charge of breaking and entering in the nighttime and pleaded guilty thereto, judge conferred with defendant privately and while judge is now deceased, it appears he had an investigation made and knew that articles stolen from gasoline station were found in defendant's possession when arrested; that defendant, experienced in crime and criminal proceedings, had confessed the commission of several offenses; had implicated his own child and

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 14 Am. Jur., Criminal Law, § 287.
[1, 2] Right to withdraw plea of guilty.  20 A.L.R. 1445; 66 A.L.R. 632.
[3] 14 Am. Jur., Criminal Law, § 286.
[3] Right to withdraw plea of guilty.  20 A.L.R. 1445; 66 A.L.R. 628.

after two weeks more before sentencing defendant no complaint was made as to compulsion or undue influence and that judge was satisfied plea was freely and voluntarily made, investigation by judge was sufficient to permit him to accept plea of guilty (3 Comp. Laws 1929, § 17328).

3. SAME—WITHDRAWAL OF PLEA OF GUILTY—DISCRETION OF COURT. The granting of leave to withdraw a plea of guilty after sentence rests in the sound discretion of the trial judge, subject to review only for an abuse of such discretion.

SHARPE, C. J., and BUSHNELL, J., dissenting.

Appeal from Berrien; Westin (Edward A.), J. Submitted October 15, 1948. (Docket No. 89, Calendar No. 43,956.) Decided February 28, 1949. Application for certiorari to Supreme Court of Michigan filed in Supreme Court of the United States July 19, 1949.

Reginald Crane was convicted of breaking and entering in the nighttime. On motion for leave to withdraw plea of guilty and file motion for new trial. Motion denied. Affirmed.

*George S. Keller,* for appellant.

*Eugene F. Black,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *Joseph E. Killian,* Prosecuting Attorney, for the people.

BUSHNELL, J. *(dissenting).* Defendant Reginald Crane has appealed from an order denying his "motion and petition for leave to withdraw plea of guilty and to file motion for new trial."

Crane was arrested on March 1, 1943, for drunk driving, for which he was fined by a justice of the peace and remanded to the Calhoun county jail for 78 to 80 days for failure to pay his fine. That same day, while still under the influence of liquor and, according to his testimony, sick from the effects of a long illness of tuberculosis, he was interviewed by a sergeant detective of the State police. Crane had

previously served prison sentences in Oklahoma and Michigan, totaling about 11 years. When the officer questioned Crane he said to him, according to Crane, "you got enough record, past record, I could hang a murder on you and convict you," to which Crane claimed he replied, "Well, I don't know what you mean, I haven't killed anyone." The officer then said: "I didn't say you had, but you have enough past record I could hang anything on you and make it stick."

After further conversation the officer drafted, signed and delivered to Crane the following:

"Sheriff's department, Undersheriff Raymond Russell, Sheriff Fred Hollingsworth. March 2, 1943. I, Victor Beck, detective with the Michigan State Police of Paw Paw, Michigan, agree to and with Reginald Crane, if he will make and sign a written statement regarding his recent crimes that Reginald Crane will be charged with and brought into court upon one (1) charge only, and will be arraigned on a charge of B & E, Nighttime, first offense. Signed, Victor Beck, Detective for 5th Dist. Office Mich. State Police. In the presence of Clyde Cortright, Attorney-at-Law, Marshall, Michigan."

Clyde Cortright, mentioned in this instrument, was acting only as a witness and not as Crane's attorney. Crane was also interviewed by other peace officers, including the sheriff of Berrien county, who was formerly deputy sheriff. He testified that Crane confessed the crime to which he later pleaded guilty, as well as others. This witness denied any knowledge of the so-called Beck agreement.

On March 29, 1943, Crane was arraigned in Berrien county on the charge of breaking and entering in the nighttime, to which he entered a plea of guilty. Prior to the imposition of a 7-to-15-year sentence on April 16th, the circuit judge conferred privately with Crane and with the probation officer, the prose-

cuting attorney, and a representative of the sheriff's office.

On March 17, 1944, Crane, appearing in his own behalf, filed a motion to withdraw his plea of guilty and for a new trial. To this he attached a photostatic copy of the above quoted "Victor Beck contract." His motion was based on the claim that his plea was obtained "through undue influence and compulsion;" that he was not provided with counsel, and that he now was in possession of newly-discovered evidence. The sentencing judge filed a written opinion on March 27th, in which he detailed the facts, and held that the Beck statement "did not require him (Crane) to confess guilt, but merely to make a written statement." Crane's motion was denied.

On June 30, 1947, Crane's present application was filed, he then being represented by an attorney who appeared in his behalf. The successor to the sentencing circuit judge inquired into the matter and Crane, Zick, the former prosecutor, and Kubath, the sheriff, testified under oath. Crane explained his "confession" as follows:

"*Q.* In the course of those questions and answers did you give a statement of your recent crimes?

"*A.* There were no crimes, I made them up.

"*Q.* Did you give a statement of any crimes?

"*A.* There were alleged, whatever-you-call-them.

"*Q.* In truth and fact had you committed any of the crimes you gave in that statement?

"*A.* I had not.

"*Q.* What was the reason for your giving such a statement?

"*A.* To fulfill the obligation of making a statement and to satisfy those who were concerned. That was part of the bargain Beck made with me in defendant's exhibit A and my fulfillment of my part of the transaction. My physical condition at that time was bad, I was ill, mentally confused. I think I

involved an 11-year-old boy of mine in that statement saying he was with me, and that was still part of my bargain."

. The successor circuit judge subsequently filed a written opinion in which he said that he was not convinced that his predecessor had abused his discretion, and held that Crane's second motion should be denied.

Motions to withdraw pleas after imposition of sentence rest in the sound discretion of the court and will not be disturbed unless a clear abuse is shown. *People* v. *Vasquez*, 303 Mich. 340. Under the circumstances of this case, however, it is also necessary to inquire as to whether Crane's original plea of guilty was properly received. The statute applicable to withdrawal of pleas before sentence (3 Comp. Laws 1929, § 17328 * [Stat. Ann. § 28.1058]) reads:

. "Whenever any person shall plead guilty to an information filed against him in any court, it shall be the duty of the judge of such court, before pronouncing judgment or sentence upon such plea, to become satisfied after such investigation as he may deem necessary for that purpose respecting the nature of the case, and the circumstances of such plea, that said plea was made freely, with full knowledge of the nature of the accusation, and without undue influence. And whenever said judge shall have reason to doubt the truth of such plea of guilty, it shall be his duty to vacate the same, direct a plea of not guilty to be entered and order a trial of the issue thus formed."

In *People* v. *Merhige*, 212 Mich. 601, 612, this Court quoted with approval the following from *Pope* v. *State*, 56 Fla. 81 (47 South. 487, 16 Ann. Cas. 972):

* 4 Comp. Laws 1948, § 768.35.—REPORTER.

" 'The plea should be entirely voluntary by one competent to know the consequences, and should not be induced by fear, misapprehension, persuasion, promises, inadvertence, or ignorance.   *   *   *   A defendant should be permitted to withdraw a plea of guilty given unadvisedly, when application therefor is made in good faith, and sustained by proofs, and proper offer is made to go to trial on a plea of not guilty.' "

The record discloses that although the sentencing judge, who is now deceased, conducted a statutory examination before accepting Crane's plea, he was advised after sentence as to further facts. We are unable to agree with the sentencing judge's characterization of the Beck written statement. Nor can this Court, in the light of the undisputed testimony with respect to this statement, place its stamp of judicial approval upon the methods employed by the officers involved since they undoubtedly contributed to Crane's plea of guilty. The proper administration of justice and regard for the dignity of the individual before the bar of justice forbids the determination of guilt or innocence by "horsetrading" methods.

The officers in question were fully aware of the facts. It was their duty to inform the court, and it then became the duty of the court, under the circumstances disclosed here, to set aside the plea of guilty offered by Crane, who was accused of a felony, without legal counsel, and to order his trial. Under these circumstances we are constrained to hold that the order of the circuit court denying defendant's petition for leave to withdraw his plea of guilty after sentence should be vacated, and that defendant should be permitted to withdraw his plea and be tried upon information.

The order should be vacated and the cause remanded for such action as may be deemed proper not inconsistent with this opinion.

Sharpe, C. J., concurred with Bushnell, J.

Dethmers, J. Two meritorious questions are discussed in defendant's brief: (1) Was defendant's plea of guilty "made freely, with full knowledge of the nature of the accusation, and without undue influence?"; (2) Did the sentencing judge, as required by statute (3 Comp. Laws 1929, § 17328 * [Stat. Ann. § 28.1058]), make investigation respecting the nature of the case and the circumstances of the plea of guilty and become satisfied that it was freely and understandingly made, without undue influence?

To the statement of facts in Mr. Justice Bushnell's opinion should be added the following:

The information charged defendant with the offense of breaking and entering in the nighttime with intent to steal and stealing property of a value of $500.† Upon arraignment in circuit court the judge explained to defendant the nature of the offense charged against him and advised him that he had the privilege of pleading not guilty or standing mute, in which case the court would enter a plea of not guilty, and that the case, in either event, would be put down for trial, or that defendant might plead guilty, in which event there would be no trial, but an investigation by the probation officer, after which sentence would be imposed. Thereupon the following occurred:

---

* 4 Comp. Laws 1948, § 768.35.—Reporter.
† See Act No. 328, § 110, Pub. Acts 1931 (4 Comp. Laws 1948, § 750.110 [Comp. Laws Supp. 1940, § 17115-110, Stat. Ann. § 28.305]).—Reporter.

"*The Court:* I ask you in the light of that how you wish to plead?

"*Defendant Crane:* May I ask one thing, I think there is a mistake there in the figures. I think it should be $50 instead of $500. I intend to make restitution, I want that corrected, but I am guilty of the charge.

"*The Court:* So far as the offense is concerned it is immaterial whether $50 or $500, but the exact figure will be checked undoubtedly when the probation officer checks with you.

"*Defendant Crane:* Guilty.

"*The Court:* All right, a plea of guilty will be received."

The following appears in the opinion of the sentencing judge denying defendant's first motion for leave to withdraw the plea of guilty and to file a motion for new trial:

"When defendant pleaded guilty on March 29th, the order was made in open court, in his presence, that he was being remanded back to jail to await investigation and report by the probation officer. A most thorough report was made and furnished the court by the probation officer. *More than two weeks elapsed after plea and before sentence.* The court not only *conferred privately with defendant to assure itself that his plea was knowingly and freely made,* but the court also held a joint conference with the probation officer, the prosecuting officer, and a representative of the sheriff's office having this case in charge.

"The investigation made by the court disclosed not only his guilt in the instant case, but that he also used a small child in its accomplishment, evidenced by finger prints of the child on the broken window pane, and the confirming statement of the child, his child, who had travelled with him on his depradations from Texas to Michigan. He made no attempt to deny his guilt; his only plea was for mercy be-

cause of his family, and that he be not sentenced as a third or fourth offender. * * *

"He (defendant) gave a statement to the Berrien county officers, which was taken stenographically, question and answer, by the official county stenographer.

"That statement reveals why he wanted to be assured that he would be charged with B & E nite time, and charged with one offense only, and which was not to be 'supplemented nor * * * beyond which might be given any first offender.'

"That statement shows that he had committed a string of innumerable breaking and enterings from Texas to Michigan, with detours into Colorado, Iowa, and Indianapolis, Indiana. More light is thrown upon his desire for assurance to be treated as a first offender by his FBI finger print record, which is set forth in the report of investigation made by the probation officer of Berrien county in connection with the offense here involved, which record discloses that in 1926 in Detroit he was given 1-to-10-year sentence for a felony, U. D. A. A.; that in 1930, from Jackson, Michigan, he was given a 5-to-14-year sentence for forgery; that in 1935 in Oklahoma, he was given 3½ years for forgery, 2d degree; that in February, 1937, the St. Louis (Missouri) authorities returned him to Jackson prison; that in March, 1937, he was sentenced from Jackson, Michigan, to 7½ to 15 years for escaping prison; that in August, 1940, he was sentenced from Marquette, Michigan, for 3 to 6 years for prison escape."

After the death of the sentencing judge defendant filed a second motion for leave to withdraw the plea of guilty and to file a motion for new trial, denial of which is before us on this appeal. At the hearing on that motion the Berrien county sheriff, Kubath, testified concerning defendant's confession of the offense with which he was charged, as follows:

"And he at first denied ever being at the station or taking anything from the station, but at the time

of his arrest, he had a cash register, and also some other articles taken from this gas[oline?] station and when he was confronted with that evidence he later on admitted to me at the jail he had put his little boy in the station, broken a window and put the boy in the station and the boy went around to the front door and open the door so he could get into the station and he had taken this cash register along with other articles out of the station and put them in his car and headed toward Kalamazoo or Battle Creek with them."

The statement in the sentencing judge's opinion that he conferred with defendant before sentence and assured himself that defendant's plea was knowingly and freely made is not to be lightly disregarded. *People* v. *Palm,* 245 Mich. 396. It is assailed by a defendant, with a record as above detailed, who apparently claims a conspiracy by and between State police officers, the sheriffs' departments of two counties, an attorney, a prosecuting attorney, a municipal judge and a circuit judge to railroad him to prison. Concerning his claim in that regard we quote from plaintiff's brief (figures in parentheses refer to pages in the printed record) :

"Defendant in his oral testimony claimed that commencing with his arrest in Marshall on March 1, 1943, he was threatened and brow-beat by two officers from Kalamazoo (25) ; that Detective Beck threatened to hang a murder on him (26) ; that the Marshall officers refused to let him consult an attorney (27), that Detective Beck suggested he fabricate a criminal confession (27); that his acquaintance and perhaps attorney, * * * who witnessed defendant's exhibit A at the request of defendant, was drunk at the time he witnessed it even though * * * (he), by defendant's own testimony, had .come to the Marshall jail at the request of defendant (28), that Sheriff Hastings of Berrien county kept .defendant in a padded·cell for three days·and

three nights without anything to eat (31), that Sheriff Hastings refused to let defendant see his wife (32), that Judge Hammond of the municipal court of the city of Benton Harbor, refused to inform defendant of the charge upon which he was brought before said magistrate (32), that Judge Hammond permitted defendant to be brought before him without a complaint or warrant having been prepared or executed (32, 33), that Prosecuting Attorney Karl Zick immediately following defendant's arraignment in circuit court, took away from defendant his copy of the information (34), that Judge Evans, just prior to sentence and in a private interview, led defendant to believe he was to receive a sentence of 1 to 15 years by doodling with a pencil (34, 35), and that Chief Deputy Sheriff Kubath of Berrien county obtained information from defendant by threatening him with a beating (41)."

An examination of defendant's testimony substantiates the statement in the trial court's opinion that:

"The defendant, to put it mildly, is not to be trusted to tell the truth whenever it will conflict with his own purposes or desires."

Defendant, 41 years of age, not only was a man with much experience with crime and criminal proceedings in the courts, but had graduated from high school, had 2 years in college, attended a medical school, and, as he put it, "had 11 years training in various prisons around the country."

Let it be said at the outset that defendant makes no claim that his plea was not understandingly made. Was it made freely, voluntarily and without undue influence, or was it made, as defendant claims, "under the compulsion of defendant's exhibit A"? The exhibit did not call for a plea of guilty to any, charge, but only a written statement regarding defendant's recent crimes. The exhibit, or so-called

deal with State police detective Beck, did not serve
to persuade defendant to give such a statement to
Beck. On the contrary, after he had not seen Beck
for a week and had denied his guilt of the offense
to the Berrien county sheriff, he finally made his
confession of recent crimes and admitted his guilt
of the offense here involved only after he was con-
fronted by the sheriff with the stolen articles found
in defendant's automobile at the time of his arrest;
and concerning this confession, he testified:

"As a matter of fact I gave this statement of my
so-called recent crimes to Mr. Kubath (sheriff), as
a result of his question."

From this it would appear that exhibit A not only
did not induce defendant to plead guilty, but was
not even the inducement to his making a confession
of his recent crimes. Three weeks intervened be-
tween his confession and his arraignment in circuit
court, at which time this well-educated defendant,
with many years' experience with crime and court
proceedings, challenged the figures in the informa-
tion and wanted them changed as to the value of the
stolen goods, from $500 to $50, because, as he said,
he wished to make restitution. When assured at
that point that the figures made no difference as to
the nature of the offense, he thereupon pleaded guil-
ty as charged and was sentenced some 2 weeks there-
after. During the 5 weeks intervening between his
confession and sentence he never protested inno-
cence or claimed that he was the victim of a deal or
frame-up. The sentencing judge's opinion positive-
ly states that as a result of his investigation and a
conference with defendant he became satisfied that
the plea of guilty was made freely and voluntarily.
The facts of the case are not compatible with the
idea that defendant acted under the compulsion of
exhibit A or under any undue influence other than

that of his knowledge that he was guilty and that the officers had the proofs.

Did the sentencing judge make proper investigation respecting the nature of the case and the circumstances of the plea and become satisfied that it was freely made without undue influence, and was he justified in being so satisfied by what his investigation disclosed? The judge answered in the affirmative. No transcript was made of his private conference with defendant and, except for defendant's claims, we cannot know what transpired, death having sealed the lips of the judge. We do know, however, that before sentence the judge caused an investigation to be made and that he knew or learned the following: That the articles stolen from the station in question were found in defendant's possession when he was arrested; that defendant, experienced in crime and criminal proceedings, had confessed the commission of several offenses, including the one charged; that in his confession he had implicated his own child; that a window pane, broken to effect entrance into the station, bore the fingerprints of the child; that the child confirmed the father's statement as to how the station had been entered; that defendant objected to the allegation in the information that the property stolen from the station was of a value of $500, claiming that it should be $50 and that he wanted the figure corrected because he intended to make restitution; that defendant had been in custody for 3 weeks after confession and before arraignment in the circuit court and another 2 weeks thereafter before sentence, during all of which time he made no complaint of compulsion or undue influence; that the judge had conferred with defendant privately and was satisfied from what he learned from him that his plea was free and voluntary. What further investigation does the statute require? What more should be con-

sidered necessary to justify the judge in becoming satisfied that the plea of guilty was made, not because of undue influence, but voluntarily, because defendant, an experienced criminal familiar with his rights, knew he was guilty and that the officers could prove it?

Defendant protests that the question of his guilt or innocence is not before us, but only whether his plea was voluntarily made; that, hence, no consideration may be given to his previous record or the proofs of his guilt of the offense charged. But these are material to a determination of why defendant pleaded guilty. In making that determination the statute requires the judge to make investigation respecting the nature of the case (3 Comp. Laws 1929, § 17328) and "to examine carefully into the facts of the case." *Edwards* v. *People,* 39 Mich. 760.

The granting of leave to withdraw a plea of guilty after sentence rests in the sound discretion of the trial judge, subject to review only for an abuse of such discretion. *People* v. *Goldman,* 245 Mich. 578; *People* v. *Vasquez,* 303 Mich. 340. There are a number of cases in which we have considered the question of whether a trial court did abuse its discretion in denying a defendant's motion, made after sentence, for leave to withdraw the plea of guilty on the grounds that the plea had been induced by undue influence. We quote from the syllabi of 4 such cases:

"On appeal from denial of motion to set aside sentences for statutory rape, allow change of plea to not guilty and grant a new trial, claim that cases were hurried through court without opportunity to consult an attorney and that plea of guilty was made under the assurance of the assistant prosecuting attorney that such would be their best course held, untenable in view of the elapse of a week between the entry of their pleas and sentence during

which time their relatives and friends had access to them, their statement to the court that no inducement to plead guilty had been made to them, and investigation made at request of court who was fully informed thereby as to their characters." *People* v. *Skropski* (syllabus), 292 Mich. 461.

"There was no abuse of the court's discretion in denying defendant's motion for leave to withdraw his plea of guilty after sentence, on the ground that he had been induced to enter said plea of guilty on his counsel's advice that the penalty would be less severe; the record showing that defendant's examination by the trial judge to determine whether his plea of guilty was voluntarily made was complete, full, and searching, and leaving no doubt that it was voluntarily made." *People* v. *Goldman* (syllabus), *supra.*

"Where defendants charged with criminal offenses on two occasions in open court solemnly averred that there was no duress or undue influence used in inducing them to change their pleas of not guilty to guilty, the court properly denied a motion for new trial based upon their affidavits that said change of plea was not freely made but was induced by fear, by 'third degree methods,' and by a promise that the informations would be so amended as to charge defendants with a lesser offense." *People* v. *Williams* (syllabus), 225 Mich. 133.

"Where defendant, jointly charged with her paramour with the murder of her husband, entered a plea of guilty, the court made investigation pursuant to 3 Comp. Laws 1915, § 15830,* and became satisfied that the confession and plea had been freely made, with full knowledge of the nature of the accusation and without undue influence, a motion to vacate the judgment and plea and for a new trial, based on affidavits of herself and codefendant that she was not guilty, and that she confessed while un-

---

* This section has been re-enacted and is now 4 Comp. Laws 1948, § 728.35.—REPORTER.

der his dominating influence, was properly denied."
*People* v. *Kobrzycki* (syllabus), 242 Mich. 44.

In each of these 4 cases we held that, in view of
the trial court's investigation respecting the nature
of the case and the circumstances of the plea of
guilty and its determination that the plea was free-
ly made, and of the fact that such investigation dis-
closed facts eloquent of defendant's guilt, and in
view of the lapse of time between arraignment and
sentence which afforded the defendant ample time
to change his plea before sentence, it was not an
abuse of discretion on the part of the trial court to
deny the motion, made after sentence, to permit
withdrawal of plea of guilty, despite the claims that
such plea was induced in the *Skropski Case* by as-
surances by the prosecuting attorney that that
would be defendant's best course, in the *Goldman
Case* by counsel's advice that the penalty would be
less severe, in the *Williams Case* by third degree
methods and a promise to reduce the charge, and in
the *Kobrzycki Case* by the dominating influence of
defendant's codefendant paramour. Thus, in the
instant case, the utter lack of any showing that any-
one urged defendant to plead guilty or asked him to
do anything other than make a written statement
concerning his recent crimes, the fact that defendant
had had much previous court experience and that he
insisted that the figures in the information be
changed, his expressed desire to make restitution,
the convincing proofs of defendant's guilt of the
offense charged, the trial judge's private conference
with defendant and assurance therefrom that the
plea was freely and voluntarily made, the lapse of
time between Beck's promise to defendant and his
ultimate confession to the sheriff and between that
confession and his circuit court arraignment and be-
tween arraignment and sentence, and the lack of

protests or objections by defendant during the 5-week period between confession and sentence, convince us that the trial judge was justified in concluding that the plea of guilty was freely and voluntarily made, and that it was not an abuse of discretion to deny defendant's motion.

The order of the circuit court denying defendant's motion for leave to withdraw plea of guilty and to file motion for new trial is affirmed.

BOYLES, REID, NORTH, BUTZEL, and CARR, JJ., concurred with DETHMERS, J.