PEOPLE v CERVANTES

Docket No. 98917. Argued January 11, 1995 (Calendar No. 3). Decided
    May 17, 1995.

    Martin R. Cervantes was convicted by a jury in the Gratiot
    Circuit Court, Randy L. Tahvonen, J., of breaking and entering
    an unoccupied building with the intent to commit larceny.
    Following trial, the defendant pleaded guilty of resisting or
    obstructing an officer, felonious assault, and being an habitual
    offender, third offense. The Court of Appeals, CAVANAGH, P.J.,
    and MARILYN KELLY, J. (M. D. SCHWARTZ, J., dissenting), af-
    firmed in an unpublished opinion per curiam, but remanded for
    resentencing because the sentence violated the principle of
    proportionality under *People v Milbourn,* 435 Mich 630; 461
    NW2d 1 (1990) (Docket No. 139378). The people appeal.

    In separate opinions, the Supreme Court *held:*

    The sentencing guidelines do not apply to the sentencing of
habitual offenders. The trial court did not abuse its discretion
in sentencing the defendant. The Court of Appeals erred in
trying to create a mathematical formula to review the defen-
dant's sentence.

    Justice RILEY, joined by Justices MALLETT and WEAVER stated
that habitual criminals may be punished more severely in
order to deter future criminal conduct. The sentencing guide-
lines do not apply to habitual offenders. There was no consider-
ation of habitual offender sentencing in the creation of the
guidelines, and it would be misleading and statistically invalid
to attempt to apply the guidelines to habitual offenders, and
would preempt legislative development of guidelines to specifi-
cally address habitual offender sentences. In this case, the
Court of Appeals erred in trying to create a mathematical
formula to determine whether the sentence imposed was
proper. Rather, it should have considered whether the trial
court abused its discretion in imposing sentence.

    Implicit in the sentencing guidelines' legislation is the inten-
tion that appellate courts have available some level of review of
habitual offenders and that the level of review is abuse of
discretion. Applying that standard in this case, it can be
concluded that the trial court did not abuse its discretion in
sentencing the defendant. It acted reasonably by properly

considering the defendant's extensive criminal history and his potential for rehabilitation, and arrived at a sentence that did not exceed the statutorily proscribed maximum sentence enhancement.

Justice CAVANAGH, joined by Chief Justice BRICKLEY and Justice LEVIN, concurring in part and dissenting in part, stated that the lead opinion failed to adequately discuss and apply the principle of proportionality established in *Milbourn*, i.e., that a sentence is an abuse of discretion if it is not proportional to the seriousness of the offense and the offender.

Judicial sentencing discretion should be guided by the legislatively established sentencing scheme. There is no place in the principle of proportionality for any type of rigid approach that fails to consider the surrounding circumstances of the offense and the offender. The key test is whether the sentence is proportional to the seriousness of the matter, not whether it departs from or adheres to the guidelines' recommended range. Although the guidelines do not apply to habitual offenders, in coordination with the enhancement statutes they can be useful in evaluating whether a sentence is proportional, honoring the legislative intent of providing enhanced sentencing of repeat offenders.

When engaging in appellate review of a given sentence, the question is not whether an appellate court would have imposed the same sentence the trial court imposed, but whether the appellate court can say that the sentence imposed is an abuse of discretion because it is disproportionate.

Justice BOYLE, concurring in the result, stated that the allowance of appellate review of statutorily valid sentences constitutes an unconstitutional incursion into the sentencing discretion delegated by the Legislature to trial judges. Respect for stare decisis cannot overcome adherence to limitations on the authority of the Supreme Court.

Reversed.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *Mark A. Gates,* Prosecuting Attorney, and *J. Ronald Kaplansky,* Assistant Attorney General, for the people.

State Appellate Defender (by *Debra A. Gutierrez*) for the defendant.

RILEY, J. In this case, we are called upon to

determine whether a sentence imposed on an habitual offender, which exceeds the established sentencing guidelines limit, constitutes an abuse of discretion. Specifically, we must decide whether defendant's sentences of ten to twenty years for breaking and entering with intent to commit larceny[1] and four to eight years for felonious assault[2] were improper. We conclude that the trial judge did not abuse his discretion in sentencing defendant because defendant's past crimes had escalated in severity and were such that he had established his inability to be rehabilitated. Moreover, we stress that the sentencing guidelines do not apply to the sentencing of habitual offenders.

I

On December 5, 1990, Ithaca Police Chief Lee Schlappi investigated a breaking and entering at Sam's Brothers in Ithaca, Michigan. During this investigation, Chief Schlappi came upon a young woman, Michelle Craig, who was walking through town wearing a green leather jacket that matched the description of one of the missing items. When he asked her about the jacket, Craig claimed that she owned it. Later that day, Chief Schlappi attempted to contact Craig by going to defendant's house where he believed she might be. While looking for Craig at the house, Chief Schlappi found two plastic bags filled with some of the stolen items. Chief Schlappi did not arrest defendant, but did take the bags as he left the premises.

On the following day, the police found Craig in Alma, Michigan, and brought her to the Gratiot County Sheriff's Department for questioning. During questioning, she explained her involvement in

---

[1] MCL 750.110; MSA 28.305.

[2] MCL 750.82; MSA 28.277.

the breakings and enterings and also implicated defendant. The next day, Chief Schlappi went to defendant's home to arrest him. Defendant attempted to avoid arrest by brandishing two knives and fleeing through a kitchen window. A chase ensued and he was apprehended.

Defendant was then brought to trial on February 12, 1991, in the Gratiot Circuit Court before Judge Randy L. Tahvonen. At trial, Craig testified that during the early morning hours of December 5, she and defendant stole clothing from Fashion Wheel and Sam's Brothers.

On the basis of this evidence, the jury convicted defendant of breaking and entering Sam's Brothers with intent to commit larceny, but could not arrive at a verdict in regard to defendant's charge of breaking and entering the Fashion Wheel store.[3] Following this trial, defendant pleaded guilty of resisting or obstructing an officer,[4] felonious assault,[5] and of being an habitual offender, third offense.[6]

On March 18, 1991, defendant was sentenced for all the convictions. For the breaking and entering with intent to commit larceny and the felonious assault convictions, Judge Tahvonen sentenced defendant as an habitual offender and imposed terms of ten to twenty years and four to eight years, respectively. The longest maximum term for breaking and entering is ten years,[7] while the longest maximum term for felonious assault is four years,[8] therefore the enhancement of these sentences is permissible under the habitual offender statute, which allows these maximum

---

[3] Defendant has not been retried on this count.

[4] MCL 752.825; MSA 13.1484(5).

[5] MCL 750.82; MSA 28.277.

[6] MCL 769.11; MSA 28.1083.

[7] MCL 750.110; MSA 28.305.

[8] MCL 750.503; MSA 28.771.

terms to be doubled.[9] Defendant also received five
to ten years for violating his probation[10] and two to
four years for resisting arrest.

Defendant appealed only the breaking and en-
tering conviction and the enhanced sentences im-
posed for breaking and entering and felonious
assault conviction. On February 1, 1994, the Court
of Appeals affirmed the convictions,[11] but re-
manded for resentencing on the ground that the
trial court's sentences violated the principle of
proportionality under *People v Milbourn,* 435 Mich
630; 461 NW2d 1 (1990). The prosecutor petitioned
this Court for leave to appeal, which was granted
on July 22, 1994.[12]

II

Punishing habitual criminals differently from
first-time offenders dates back as far as 1929,
when, in *People v Palm,* 245 Mich 396, 401; 223
NW 67 (1929), this Court specifically noted that an
increase in punishment was necessary for habitual
criminals "because of the apparent persistence in
the commission of crime by the person convicted
and his indifference to the laws deemed necessary
for the protection of the people and their prop-
erty." More recently, this Court explained that it
is necessary to punish habitual criminals more
severely in order to deter future criminal conduct:

"[T]he legislature did not intend to make a
separate substantive crime out of being an habit-
ual criminal but rather, for deterrent purposes,
intended to augment the punishment for second or

---

[9] MCL 769.11; MSA 28.1083.

[10] Defendant was convicted in 1989 on two separate charges of
breaking and entering.

[11] Unpublished opinion per curiam (Docket No. 139378).

[12] 445 Mich 943.

subsequent felonies." [*People v Hendrick,* 398 Mich 410, 416-417; 247 NW2d 840 (1976), quoting *People v Shotwell,* 352 Mich 42, 46; 88 NW2d 313 (1958).]

Today the Legislature has codified this principle in MCL 769.11; MSA 28.1083:

> (1) If a person has been convicted of 2 or more felonies, attempts to commit felonies, or both, whether the convictions occurred in this state or would have been for felonies in this state if the convictions obtained outside this state had been obtained in this state, and that person commits a subsequent felony within this state, the person shall be punished upon conviction as follows:
>
> (a) If the subsequent felony is punishable upon a first conviction by imprisonment for a term less than life, then the court, except as otherwise provided in this section or section 1 of chapter 11, may sentence the person to imprisonment for a maximum term which is not more than twice the longest term prescribed by law for a first conviction of that offense or for a lesser term.

In the present case, defendant was convicted of breaking and entering an unoccupied building with intent to commit larceny, which carries with it a penalty of up to ten years in prison.[13] Defendant points out that the sentencing guidelines recommend only a sentence from zero to two years. Michigan Sentencing Guidelines (2d ed), p 38.

However, as noted earlier, the sentencing guidelines do not apply to habitual offenders. See *People v Williams,* 191 Mich App 685; 479 NW2d 36 (1991); *People v Finstrom,* 186 Mich App 342; 463 NW2d 272 (1990). There was no consideration of habitual offender sentencing in the creation of the existing sentencing guidelines; therefore, it would

---

[13] MCL 750.110; MSA 28.305.

be both misleading and statistically invalid to attempt in any way to apply the existing guidelines to the sentencing of habitual offenders. Further, to hold that the sentencing guidelines have any effect on the sentencing of habitual offenders would preempt the Legislature's development of guidelines that will specifically address habitual offender sentences. It is understood that

> [e]ven though the Sentencing Guidelines do not apply where an offender is to be sentenced as an habitual offender, the judge must complete the [sentence information report] on the underlying offense. This information will aid in the development of guidelines to cover habitual offenders. [Michigan Sentencing Guidelines (2d ed), p 1.]

Defendant further claims that even if the sentencing guidelines do not apply to an habitual offender like himself, the sentence that he received was disproportionate in light of *Milbourn, supra.* The Court of Appeals agreed:

> Although the sentencing guidelines do not apply to habitual offenders, one way to test the proportionality of an habitual offender sentence is to compare the guidelines recommendation with the degree of sentence enhancement authorized by the Legislature for the underlying crime. *People v Oelberg,* 197 Mich App 346, 347; 494 NW2d 869 (1992). [Unpublished opinion per curiam, issued February 1, 1994 (Docket No. 139378), pp 1-2.]

We conclude, however, that the Court of Appeals erred, as did the *Oelberg* Court, in trying to create a mathematical formula to determine whether the sentence imposed on defendant was proper.

Instead, the Court of Appeals should have considered whether the trial judge abused his discretion in imposing this sentence. As a general rule,

sentencing law is a question of legislative intent. "Our preeminent requirement in formulating an alternative is to respect the purpose the Legislature of our state has manifested with regard to sentencing." *Milbourn, supra* at 635. In the present case, the best indication of legislative intent can be found in the recently enacted sentencing guidelines' legislation:

> If a minimum sentence is within the appropriate guidelines sentence range, the court of appeals shall affirm that sentence and shall not remand for resentencing absent an error in scoring the sentencing guidelines or inaccurate information relied upon in determining the defendant's sentence. [1994 PA 445; MCL 769.34(10); MSA 28.1097(3.4)(10).]

Although this provision is not directly relevant, because the present sentencing guidelines are inapplicable to habitual offenders,[14] we believe that this excerpt clearly demonstrates that the Legislature intends for the Court to have some level of review available to it for habitual offenders. We are persuaded that this level of review should be that of abuse of discretion.

Applying this standard of review, we conclude that the trial judge did not abuse his discretion in sentencing defendant. He acted reasonably by considering both defendant's extensive criminal history and his potential for rehabilitation. The trial judge was correct in performing this analysis because "[u]nder our present framework of indeterminate sentencing, sentences are based more on an assessment of the offender than the offense." *People v Mazzie,* 429 Mich 29, 33; 413 NW2d 1

---

[14] The guidelines' legislation contemplates that the sentencing commission will formulate and the Legislature will enact guidelines for habitual offenders. This process, however, has not yet been completed.

(1987). Here, the judge examined four factors: (1) the proper way to discipline defendant, (2) the need to protect society from defendant, (3) the potential for reforming defendant, and (4) the potential of deterring others from committing like offenses. The trial judge noted that the breaking and entering was a serious crime and that defendant had become more dangerous to society because his crimes had escalated from nonviolent robberies into dangerous weapon assaults against police officers.[15] The judge then concluded that defendant had clearly demonstrated his lack of intent to reform by violating his probation. Finally, he stated that one of the purposes of sentencing is to deter others from committing similar acts by setting a high market price on the crime.[16] The judge took all these factors into account and sentenced defendant to ten to twenty years for the breaking and entering and four to eight years for the felonious assault.

The trial judge's sentencing of defendant, although significant, is not unprecedented. It is not unlike *Milbourn's* recognition that "the Legislature, in setting a range of allowable punishments for a single felony, intended persons whose conduct is more harmful and who have more serious prior criminal records to receive greater punishment than those whose criminal behavior and

---

[15] Although the trial judge did not specifically note that defendant had enlisted the help of a sixteen-year-old girl in the commission of the crime, this fact provides additional support for the sentence imposed. See, generally, *Morris v Ford Motor Co,* 320 Mich 372; 31 NW2d 89 (1948); *Menendez v Detroit,* 337 Mich 476; 60 NW2d 319 (1953).

[16] A third purpose of sentencing is to deter people from committing crimes. That means to fix the market price for crime today.

prior record are less threatening to society." *Id.* at 651.[17]

In *People v Odendahl,* 200 Mich App 539, 541; 505 NW2d 16 (1993), the sentencing guidelines recommended a sentence of twenty-four to thirty-two months, but the Court of Appeals affirmed a sentence of ten to fifteen years, which exceeded the guidelines range. In that case, the defendant was convicted of felonious assault and possession of a firearm during the commission of a felony. He was a fourth-time offender and was sentenced to ten to fifteen years for the habitual offender conviction. The Court noted:

> The sentencing guidelines for the felonious assault conviction provided a range of twenty-four to thirty-two months, but the trial court properly considered the circumstances of the crime, defendant's extensive criminal history, and his potential for rehabilitation. Thus, the trial court did not abuse its discretion in sentencing defendant to ten to fifteen years' imprisonment.

Courts in other jurisdictions have similarly found that substantial sentence enhancements for habitual criminals are not improper. Specifically, in *Ducanson v Indiana,* 509 NE2d 182, 187 (Ind, 1987), the Indiana Supreme Court found that a trial court did not abuse its discretion by increasing the sentence of a defendant from fifteen years

---

[17] The *Milbourn* decision requires proportionality in sentences that depart from the established guidelines. However, these guidelines do not apply to habitual criminals. Consequently, the *Milbourn* proportionality standard need not be reached in the context of the facts of this case.

The prosecutor does not dispute an appellate court's authority to review defendant's sentence for abuse of discretion. For this and other reasons, we need not reiterate the debate regarding the jurisprudential soundness of *Milbourn.* See, generally, *People v Polus,* 447 Mich 952 (1994) (statement of BOYLE and RILEY, JJ.); *Milbourn, supra* at 670 (BOYLE, J., joined by RILEY, C.J., dissenting).

to forty-five years because he was an habitual offender with three prior robbery convictions. "This fifteen (15) year sentence was enhanced by another thirty (30) years by reason of appellant's status as an habitual offender. We see no abuse of discretion of the trial court in the sentencing of appellant."

### III

We conclude that the trial judge did not abuse his discretion in sentencing defendant. Although defendant argues that the sentence imposed exceeded the recommended guidelines, these guidelines are not controlling because defendant was an habitual criminal. The judge properly considered the evolution of defendant's criminal conduct and his capacity for rehabilitation and arrived at a sentence that did not exceed the statutorily proscribed maximum sentence enhancement. Thus, we would reverse the Court of Appeals decision remanding defendant's conviction for resentencing.

MALLETT and WEAVER, JJ., concurred with RILEY, J.

CAVANAGH, J. (concurring in part and dissenting in part). There are a number of points the lead opinion makes with which I agree. For example, I agree that the defendant's sentence in this case is not an abuse of discretion,[1] that the sentencing guidelines are inapplicable to habitual offenders, and that the interplay between the sentencing guidelines and the habitual offender statutes do not create a rigid mathematical formula for the review of an habitual offender's sentence.

_____

[1] Because it is proportionate to the seriousness of the offense and offender.

I write separately, however, because I believe that the lead opinion fails to adequately discuss and apply the principle of proportionality established in *People v Milbourn,* 435 Mich 630; 461 NW2d 1 (1990), the primary judicial authority regulating appellate review of criminal sentences in Michigan. Furthermore, the creation in the lead opinion of an abuse of discretion standard based on 1994 PA 445, § 34(10) is erroneous because that provision is simply inapplicable to the case at bar. 1994 PA 445, § 34(10) has not been suggested to be applicable, let alone controlling, by either the parties, the trial court, or the Court of Appeals. It is imprudent, to say the least, to construe a statute that is not yet effective, not properly before the Court, and not necessary to decide the case at bar.

I

*Milbourn* holds that *all* criminal sentences in this state must conform to the principle of proportionality. *Id.* at 661, n 29. In so holding, this Court attempted to honor the intent underlying Michigan's legislatively prescribed sentencing scheme. In *Milbourn,* we noted that the Legislature established different sentencing ranges for different offenses. We further held that this statutory sentencing scheme embodies the "principle of proportionality" according to which sentences must be proportional to the seriousness of the matter for which punishment is imposed. *Milbourn* provides the same principle of proportionality that the Legislature embraced in devising sentencing ranges for a given crime should also guide a trial court's discretion when imposing sentence. Therefore, a sentence is an abuse of discretion if it is not proportional to the seriousness of the offense and the offender.

One aspect of creating a sentence that is proportional to the offense and the offender may include, in appropriate cases, a consideration of the offender's prior criminal history:

> In our judgment, it is appropriate—if not unavoidable—to conclude that, with regard to the judicial selection of an individual sentence within the statutory minimum and maximum for a given offense, *the Legislature similarly intended more serious commissions of a given crime by persons with a history of criminal behavior to receive harsher sentences than relatively less serious breaches of the same penal statute by first-time offenders. [Id.* at 635. Emphasis added.]

We held that the best way to honor this legislative intent is by requiring judicial sentencing discretion to be exercised in light of the same considerations.

While much of the discussion in *Milbourn* involved the role of sentencing guidelines, we, in no way, limited the scope of that opinion to crimes encompassed solely within the sentencing guidelines. *"Sentences for crimes not included in the guidelines, of course, remain reviewable under the principle of proportionality." Id.* at 661, n 29 (emphasis added).

The entire import of *Milbourn* is that judicial sentencing discretion should be guided by the legislatively established sentencing scheme. The particular legislative sentencing scheme involved in the case at bar is embodied in MCL 769.11; MSA 28.1083:

> (1) If a person has been convicted of 2 or more felonies . . . and that person commits a subsequent felony within this state, the person shall be punished upon conviction as follows:

(a) If the subsequent felony is punishable upon a first conviction by imprisonment for a term less than life, then the court . . . may sentence the person to imprisonment for a maximum term which is not more than twice the longest term prescribed by law for a first conviction of that offense or for a lesser term.

Thus, the defendant, as an habitual offender, was eligible to receive a maximum sentence that was twice as great as the statutory maximum. The habitual offender statutes[2] represent a legislative determination that offenders who persist in criminal activity should be subject to longer possible sentences.[3] Having made this determination explicit, the judicial imposition and review of habitual sentences should be guided by it. One way such guidance can be provided is by comparing the guidelines' recommendation to the degree of sentence enhancement authorized by the Legislature.[4] This approach harmonizes sentence review for

[2] See also MCL 769.10; MSA 28.1082 and MCL 769.12; MSA 28.1084.

[3] Given the fact that the defendant in this case was sentenced as an habitual offender, it would seem to go without saying that it is the legislative intent underlying the habitual offender provisions that the Court should be interpreting in this case. Despite this seemingly self-evident conclusion, the lead opinion instead draws upon 1994 PA 445, § 34(10) to support its analysis. "In the present case, the best indication of legislative intent can be found in the recently enacted sentencing guidelines' legislation . . . ." *Ante* at 627. It does this in spite of the fact that neither the parties, the trial court, nor the Court of Appeals has suggested that this statute, enacted nearly four years after the events in this case transpired, somehow controls the result in this case. Finally, it is more than a little ironic that the lead opinion, while decrying the fact that the present guidelines do not apply to habitual offenders, turns directly to the guidelines' legislation, which will apply to habitual offenders, to draw support for its conclusion.

[4] While correctly acknowledging that sentencing habitual offenders was not considered in drafting the existing guidelines, the proposition that their use in sentencing habitual offenders would be "misleading and statistically invalid" simply does not follow from the fact that habitual offenders are outside the scope of the guidelines. See *ante* at 626.

both habitual and nonhabitual sentences, which, according to *Milbourn,* is how it should be. Although the guidelines do not apply to habitual offenders, in coordination with the enhancement statutes they can be useful tools to evaluate whether a sentence is proportional.

Despite their usefulness, they are still only a part of the sentencing equation. The other part of the equation is a consideration of the seriousness of the offense and the offender. The various parts of the sentencing equation cannot be divorced from one another and still be consistent with *Milbourn.* Using the guidelines and the habitual offender statutes, when appropriate, as tools to determine whether a defendant's sentence is proportional is entirely consistent with *Milbourn* because it honors the legislative intent in providing for enhanced sentencing of repeat offenders.

This is not to say that a simple mathematical approach (i.e., doubling the guidelines' maximum/minimum range) will result in a proportional sentence in all cases. In some habitual cases, as in this one, a departure beyond a simple doubling of the guidelines' maximum/minimum range may be proportional. This is due to the fact that there is no place in the principle of proportionality for any type of rigid approach, be it mathematical or otherwise.

A rigid mathematical approach simply fails to consider the surrounding circumstances of the offense and offender. "[T]he key test is whether the sentence is proportionate to the seriousness of the matter, not whether it departs from or adheres to the guidelines' recommended range." *Milbourn, supra* at 661. Just as a guidelines' departure regarding a nonhabitual offender's sentence alerts a reviewing court to closely examine the record for articulated reasons justifying the departure, so it

should regarding an habitual offender's sentence. Thus, once the reviewing court's curiosity is piqued, the analysis turns to the reasons offered by the court to justify the departure.

II

It is evident that the defendant's ten- to twenty-year sentence exceeds the guidelines' recommended minimum of zero to two years by more than the factor provided in MCL 769.11; MSA 28.1083. Therefore, it is necessary to examine the reasons offered for the departure.

When sentencing this defendant, the trial court made the following comments:

> [O]ne of the purposes of this sentencing process is to treat the community fairly and to treat you fairly. To take into account your background, your history and to take into account the type of crime you committed in putting together a sentence that's fair to the community and fair to you. That's the overall purpose of imposing a sentence.
>
> In that regard there are certain goals that sentencing judges have in mind when they impose a sentence. One of those goals is rehabilitation. . . . The problem in this case is the Court can't count on you making that decision because this Court made the mistake of giving you that chance a couple of years ago when it placed you on probation for other breaking and enterings . . . . So the prospects of rehabilitation seems to me pretty bleak.
>
> Another purpose of sentencing is to protect the community, to impose a sentence that safeguards the community for some period of time. . . . The community is at risk. Property, and more importantly since this incident with the knives, people.
>
> *   *   *
>
> A third purpose of sentencing is to deter people

from committing crimes. That means to fix the
market price for crime today.

* * *

Another purpose of sentencing is just to fairly
punish the kind of crime you committed. And I
think if people looked at these crimes, particularly
the crime that carries the greatest maximum, the
breaking and entering as a third felony, if people
are honest they'd say that's a serious crime partic-
ularly as a third felony, but it's not the worst sort
of 20 year offense we can imagine. It's a crime
against property and it's serious, but it's not as
bad as many we see. That probably benefits you to
some degree.

The Court's considered all of those factors and
I've also considered the Michigan Supreme Court's
decision in *People v Milborn* [sic] and in *Milborn*
. . . the Supreme Court said that the greatest
possible sentence ought to be reserved for the
worse [sic] offender committing the worst offense.
That helps you in this case because no one looking
at this record can honestly say that you're the
worst offender who committed the worst offense
with regard to the B & E and the two prior supple-
ments. That means that under *Milborn* it's ques-
tionable whether you should receive the greatest
possible sentence. *Milborn* says to me you
shouldn't. . . . So I've taken that into account.

This defendant has now been convicted of five
felonies. He was on probation when he committed
these offenses. The trial court developed at length
its reasons for imposing the sentences it did. While
acknowledging that this was not a worst case
scenario, the court noted that defendant had not
learned from his prior mistakes, showed little
signs of ever changing his behavior, and escalated
his criminal activity from crimes against property
to crimes against people.

When engaging in appellate review of a given
sentence, the question is not whether an appellate

court would have imposed the same sentence the trial court imposed. *Milbourn* at 666. The question is whether an appellate court can say that the sentence imposed is an abuse of discretion because it is disproportionate. On this record, and in light of the surrounding circumstances of these offenses and this offender, I cannot conclude that the sentence is disproportionate.

BRICKLEY, C.J., and LEVIN, J., concurred with CAVANAGH, J.

BOYLE, J. (*concurring in the result*). I concur with my colleagues in reversing the Court of Appeals decision to remand the defendant's conviction for resentencing. I cannot concur in this context, however, with the principle of appellate review of the trial judge's habitual offender sentencing decision under an abuse of discretion standard.

I acknowledge that in *People v Milbourn,* 435 Mich 630; 461 NW2d 1 (1990), this Court authorized appellate review of sentences within the statutory range under an abuse of discretion standard of review based on the principle of proportionality. I also acknowledge that there may be value in the symmetry accomplished by the decision today to extend abuse of discretion appellate review to habitual offender sentences. If the Court were free to create an appellate standard of sentencing review in such cases, the standard articulated in Justice RILEY's opinion would be appropriate.

I cannot, however, join in Justice RILEY's effort, because of my continuing belief that the allowance of appellate review of statutorily valid sentences constitutes an unconstitutional incursion into the sentencing discretion delegated in this instance by the Legislature to trial judges. MCL 769.1; MSA

28.1072, *Milbourn, supra* at 670-701 (BOYLE, J.,
dissenting). While today's decision may be no more
than a logical step down the path marked out by
this Court's decision in *Milbourn,* respect for stare
decisis cannot overcome adherence to limitations
on the authority of this Court.

> [S]tare decisis embodies an important social pol-
> icy. It represents an element of continuity in law,
> and is rooted in the psychologic need to satisfy
> reasonable expectations. But stare decisis is a
> principle of policy and not a mechanical formula
> of adherence to the latest decision, however recent
> and questionable, when such adherence involves
> collision with a prior doctrine more embracing in
> its scope, intrinsically sounder, and verified by
> experience. [*Helvering v Hallock,* 309 US 106, 119;
> 60 S Ct 444; 84 L Ed 604 (1940).]