*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

MICHAEL CLIFFORD BYERS,

Defendant-Appellant.

UNPUBLISHED
March 14, 2019

No. 343806
Eaton Circuit Court
LC No. 2016-020238-FH

Before: SAWYER, P.J., and CAVANAGH and K. F. KELLY, JJ.

PER CURIAM.

Defendant, Michael Clifford Byers, pleaded guilty as charged to operating while intoxicated (OWI), third offense, MCL 257.625(1)(a), operating a vehicle without insurance, MCL 500.3102, and operating a vehicle while license suspended, MCL 257.904(1). On December 15, 2016, he was sentenced to two years' probation and accepted into sobriety court, and was ordered to serve 70 days in jail with credit for 16 days already served. On November 17, 2017, after he was arrested for another OWI, he was sentenced to a term of 40 to 60 months' imprisonment for the (OWI) third conviction. Defendant received credit for 131 days served. He appeals by leave granted.[1] We affirm.

## I. FACTS

In May 2016, defendant was arrested for driving while under the influence of Xanax, which had been prescribed for his anxiety. Defendant had been previously convicted of two OWI offenses in 1997 and 2002. At the sentencing hearing following his plea, it was established that he had a bond violation for tampering with a SCRAM tether that monitors alcohol; he apparently put something between the tether and his skin but there was no indication of alcohol consumption. The court sentenced defendant to two years' probation and accepted him into

---

[1] See *People v Byers*, unpublished order of the Court of Appeals, entered June 20, 2018 (Docket No. 343806).

sobriety court, added 10 days to the jail term that had been agreed to as part of the plea for the bond violation such that defendant was to serve 70 days, and provided a preemptive warning that defendant would be drug-tested and monitored for alcohol, and that if he violated the terms of his probation and used drugs or alcohol, the court could detain him and revisit the matter.

In March 2017, the court indicated that it had gained a new understanding of the prescribed drugs that defendant was taking for anxiety and that as a result, it was not going to grant a restricted license if defendant continued to take prescribed Xanax. Further, the court indicated that unless defendant would agree to be weaned off Xanax he would be moved to regular probation instead of sobriety court and would not be allowed to drive since there was no interlock device that would preclude him from driving if he had taken the drug.

In April 2017, defendant pleaded guilty to probation violations for missing tests with his "Smart Start" device, and for a positive alcohol read on the "Smart Start" device; defendant explained that he had taken a "wild lettuce" tincture not realizing it would have such a result. He also pleaded to a probation violation resulting from testing positive for THC; defendant explained that this was also from the "wild lettuce" tincture and that he did not realize it would have such a result. The court noted that defendant's problem was anxiety but that he would have to address the anxiety to be successful, kept defendant in the sobriety court program, sentenced him to 12 days in jail, and affirmed that defendant would get one-on-one substance abuse counseling. At some point after the April 2017 hearing, defendant's involvement in the sobriety court ended and he was put on regular probation.

In September 2017, while on regular probation, defendant was arrested again for OWI. Defendant and Gerald Reed were found standing by a truck in a ditch. Reed was the registered owner. When interviewed, defendant stated "that the driver had ran across the field, [and] had fled." Reed "shook his head." There was no investigation of a third person because the officer on site "looked out into the field and it didn't look like anyone had broken down the crops." When interviewed, Reed stated that he and defendant had been drinking and that he let defendant drive his truck. Defendant, who appeared intoxicated, then admitted to drinking but denied that he had been driving; however, he would not say that Reed had been driving. Defendant said that after the truck went in the ditch, he attempted to drive it out of the ditch. Defendant's blood alcohol content was 0.157.

The trial court found defendant guilty of violating his probation by failing to report police contact, and for drinking alcohol and driving under the influence of alcohol. The court revoked defendant's probation and sentenced him to a term of 40 to 60 months' imprisonment. The court noted that when defendant was in sobriety court, it was for drugs he was taking for anxiety, and that defendant had repeatedly challenged the need for alcohol monitoring, claiming that he was not a drinker. Defendant now appeals.

## II. ANALYSIS

### A. UPDATED PSIR

Defendant argues that because the court did not utilize an updated presentence investigation report (PSIR) when sentencing him for the probation violation, he is entitled to

resentencing. It is undisputed that the court had the benefit of an updated probation violation report. Moreover, defendant fails to identify inaccuracies in the 2016 PSIR or information that should have been included in an updated PSIR. Under these circumstances, we see no reason to remand for resentencing.

Before a person convicted of a felony is sentenced, the probation officer must prepare a PSIR. MCL 771.14(1); MCR 6.425(A)(1). "A sentencing judge must use a presentence report." *People v Hemphill*, 439 Mich 576, 579; 487 NW2d 152 (1992). The purpose of the PSIR is to give the sentencing court as much information as possible so that the sentence can be tailored to both the offense and the offender. *People v Miles*, 454 Mich 90, 97; 559 NW2d 299 (1997). The presentence report must be "reasonably updated." *Hemphill*, 439 Mich at 578-579, citing *People v Triplett*, 407 Mich 510, 515; 287 NW2d 165 (1980). This rule also applies to a sentencing after revocation of probation. *People v Crook*, 123 Mich App 500; 503; 333 NW2d 317 (1983). However,

> a defendant or the prosecutor may waive the right to a reasonably updated presentence report *at resentencing* where each believes the previously prepared report is accurate.
>
> Of course, a different case would be presented where the previously prepared presentence report contained information that was manifestly stale. To base a sentence on such information would obviously jeopardize the public interest. Unless the prior report is manifestly outdated, however, a defendant at resentencing may waive preparation of an updated report. [*Hemphill*, 439 Mich at 582.]

Defendant suggests that the court erred in sentencing him without an updated PSIR, and that in doing so, it violated MCR 6.445(G). MCR 6.445(G) provides:

> Sentencing. If the court finds that the probationer has violated a condition of probation, or if the probationer pleads guilty to a violation, the court may continue probation, modify the conditions of probation, extend the probation period, or revoke probation and impose a sentence of incarceration. The court may not sentence the probationer to prison without having considered a current presentence report and may not sentence the probationer to prison or jail (including for failing to pay fines, costs, restitution, and other financial obligations imposed by the court) without having complied with the provisions set forth in MCR 6.425(B) and (E).

Before sentencing, the court was provided with a probation violation report prepared approximately three weeks before the sentencing hearing. The report detailed the facts surrounding defendant's most recent OWI, a calculation of defendant's recommended sentencing guidelines, a description of his employment history, treatments he previously received, his past participation in court-mandated programming, a Michigan Department of Corrections (MDOC) opinion that defendant failed to take responsibility for his actions and that he was deceitful with police and an MDOC agent, defendant's past failed attempts to be rehabilitated through substance abuse therapy and court programing, an MDOC recommendation that defendant's

probation be revoked, an MDOC recommendation that due to defendant's rehabilitative failures in the past, defendant was better suited for punishment, and a recommendation that he be sentenced to jail for one year. Although defendant claims that reviewing an updated probation violation report does not excuse the court from having to review an updated PSIR, it appears that most of the information that would be included in an updated PSIR was covered in the probation violation report. It appears that finding error requiring reversal based on reliance on the probation violation report instead of an updated PSIR would be an adherence to form over substance.

A court need not sentence a defendant with a "completely new" PSIR. *People v Martinez*, 210 Mich App 199, 202; 532 NW2d 863 (1995), overruled on other grounds by *People v Cervantes*, 448 Mich 620, 625-626; 532 NW2d 831 (1995). At the time of defendant's probation violation sentencing hearing in November 2017, the PSIR was approximately a year old. In *Hemphill*, the Court held that a court did not err in sentencing a defendant with a "reasonably updated" PSIR prepared approximately nine months before the defendant was resentenced where he had waived an updated report. *Hemphill*, 439 Mich at 579. The PSIR reviewed by the court was not demonstrably older than the report at issue in *Hemphill* and it was supplemented with an updated report about defendant's new crime that had occurred within that year. Moreover, it is clear from the record that for much of the intervening year, defendant was in sobriety court and the court was aware of his progress and his struggles. Defendant has not alleged that the "old" PSIR was prepared in connection with unrelated offenses, and indeed, the report was prepared in connection to the underlying crime that was the basis for his probation. Defendant alleges that there was a significant intervening change of circumstances that warranted the preparation of a new PSIR, but he does not specify what those circumstances are. It is not this Court's task to search for support for defendants' position. *Great Lakes Div of Nat'l Steel Corp v City of Ecorse*, 227 Mich App 379, 424; 576 NW2d 667 (1998). Moreover, in the absence of any other specified changes in circumstances, it seems that the only circumstances that changed between 2016 and 2017 were defendant's new crime, the violations of his probation, and his inability to maintain sobriety or refrain from criminal behavior, all of which were included in the probation violation report. Accordingly, while the court was not provided with an updated PSIR, it was provided with pertinent updated information. Defendant fails to logically connect how any unidentified inaccurate information, or missing information, affected or would have affected the sentencing court's decision. Accordingly, we find no reason to order resentencing.

## B. DEPARTURE SENTENCE

Defendant next argues that in departing from the sentencing guidelines range, the court rendered an unreasonable sentence. Defendant further argues that the court failed to adequately justify its departure, and that the court failed to render an individualized sentence. We review departure sentences for reasonableness, *People v Lockridge*, 498 Mich at 358, 391-392; 870 NW2d 502 (2015), and the trial court's determination of reasonableness for an abuse of discretion, *People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017) (often referred to as *Steanhouse II)*. A departure sentence is reasonable if it is "proportionate to the seriousness of the circumstances surrounding the offense and the offender." *Steanhouse*, 500 Mich at 460.

While trial courts are no longer obligated to find a substantial and compelling reason to depart from the minimum guidelines range, trial courts are still required to score and consider the guidelines when imposing a sentence. *Lockridge*, 498 Mich at 391-392. Defendant states that the court did not score or consider the guidelines in sentencing him. Indeed, there was no reference to the guidelines or the scoring of variables. However, the guideline range was 0 to 11 months. The probation agent recommended that defendant receive a year. The recommendations were similar and there is nothing to suggest that the decision to depart would have been different if the guidelines had been expressly referenced.

Defendant argues that his sentence was not proportional to his crime and him as an offender. Recently, in *People v Dixon-Bey*, 321 Mich App 490, 524-525; 909 NW2d 458 (2017), lv gtd 501 Mich 1066 (2018), this Court provided guidance for determining whether a departure sentence satisfies the principle of proportionality, stating:

> Because the guidelines embody the principle of proportionality and trial courts must consult them when sentencing, it follows that they continue to serve as a "useful tool" or "guideposts" for effectively combating disparity in sentencing. Therefore, relevant factors for determining whether a departure sentence is more proportionate than a sentence within the guidelines range continue to include (1) whether the guidelines accurately reflect the seriousness of the crime, (2) factors not considered by the guidelines, and (3) factors considered by the guidelines but given inadequate weight. When making this determination and sentencing a defendant, a trial court must " 'justify the sentence imposed in order to facilitate appellate review,' " which "includes an explanation of why the sentence imposed is more proportionate to the offense and the offender than a different sentence would have been." [Citations omitted.]

In this case, the court offered justification for its departure sentence and why it was more proportionate than a different sentence would have been, stating:

> In reviewing the probation violation report . . . the report states that [defendant] stated:
>
> "I'm not going to put my buddy" – meaning Mr. Reed– "behind the wheel because he wasn't driving."
>
> He continued:
>
> "And I'm not certainly going to admit to driving the vehicle other than getting behind the wheel and trying to get it unstuck from the ditch and spinning the wheels as he was going—as he was doing so when he couldn't get the truck free."
>
> And then the officer asked:
>
> "So, you admit to driving at that time?"
>
> [Defendant] states:

"That's the only driving I will admit to."

[A witness] testified that when the [defendant and Reed] left her residence [Reed] was driving the vehicle, but there were only two people in the vehicle. I don't know who this mysterious third person could be. There was no testimony from either side indicating that there was a mysterious third person driving the vehicle.

And then, [defendant] previously was in our Sobriety Court program. And we had numerous discussions with [defendant] (sic) – I had some at the bench here – in that he suffered from anxiety, and that he indicated to me, numerous times, that he didn't understand why he'd had to be on alcohol monitoring because he wasn't a drinker.

And yet, here we are today that he admitted to drinking, that Ms. [sic] Reed (sic) admitted that he was intoxicated. Wasn't driving, but he was intoxicated. And he admitted to the officer that – he admitted to driving to get the truck unstuck, but I'm not going to put my buddy, meaning Reed, behind the wheel because he wasn't driving. So, who is the Court to assume was the driver of this vehicle? And the Court [previously] found, by a preponderance of the evidence, that [defendant] was driving.

[The prosecutor] is correct that, when you're on probation and you commit – the worst offense that you can commit is another crime, and the worst of the worst would be drinking and driving.

And I like the idea, [defendant], that you're part of the community; however, this is the same community that you put at risk for driving almost twice the legal limit when you knew you shouldn't have been driving because [a witness] was carting you around earlier to get money to go to the casino.

Since rehabilitation hasn't worked, since following the rules hasn't worked, I have to look at for protection of society. And I'm going to protect society for every day I legally can.

The prosecution then stated that since defendant's minimum guidelines range was calculated at a term of 0 to 11 months' imprisonment, a sentence of 40 months would be a departure sentence. The prosecution argued that a probation violation had been deemed an adequate basis for a departure previously by Michigan appellate courts, and that the departure in defendant's case was "a proportional and reasonable sentence given [defendant's] conduct and the nature of the violation, as well as the nature of what [defendant] is on probation for." The court then stated,

I stated on the record why I thought, and I think that's more than sufficient to show that [a departure was reasonable.] [Defendant] was on probation for drinking and driving, and one of the rules was he was not to drink and the other one was he wasn't supposed to drive. He did both, and the vehicle crashed. I

think that's clear and convincing. I – I know it's preponderance was the meaning, but I – I think he's a danger to society, and that's why I did what I did.

Defendant argues that the sentence was not proportional because in sentencing him, the court characterized him as a recidivist criminal who deserved a greater punishment. The court did highlight defendant's previous criminality, but it did not do so improperly as defendant contends. In sentencing defendant, the court's reliance on defendant's prior two OWI convictions and inability to maintain compliance with the terms of his probation was not improper. The convictions are factually and legally related to defendant's probation violation, and are reflective of the quantum of defendant's inability to recognize that his substance abuse issue leads to criminality.

Defendant's evasive and deceptive attitude taken with police and the MDOC in connection with his most recent OWI, and in attempting to skirt responsibility for drinking and driving, was a proper justification for departing from the guidelines, because defendant's behavior was not considered by the guidelines, and a reasonable jurist could determine that the guidelines did not reflect the seriousness of defendant's inability to recognize the danger of his actions and wrongdoing. *Dixon-Bey*, 321 Mich App at 524-525. Defendant's attempts to skirt arrest for OWI by denying driving, and his attempts to minimize his criminal behavior with his probation agent by continuing to adhere to his story that a mysterious third person drove into the ditch and then fled, shows a particular lack of respect for the well-being of the public, the seriousness of drinking and driving, and a respect for adherence to the law.

Defendant implies that the court improperly relied on the fact that he had a substance abuse issue in departing from the minimum guidelines range. The court did refer to defendant's continued abuse of substances as a reason for its departure sentence. In referencing defendant's unaddressed substance abuse issues, the court was likely postulating that because defendant was on probation for an OWI at the time he incurred his most recent OWI, and was unsuccessfully enrolled in an alternative substance abuse court and substance abuse treatment, was under court order to remain sober, was monitored by the MDOC, and did not have a license to drive when he was arrested, he was not a likely candidate for rehabilitation, and that instead of rehabilitation, protection of society and deterrence should be the motivating factors in sentencing defendant and departing from the sentencing guidelines. A defendant's potential for rehabilitation or propensity for recidivism and misconduct while in custody are factors not recognized by the guidelines, and can be considered by a trial court when imposing a departure sentence. *People v Steanhouse*, 313 Mich App 1, 46; 880 NW2d 297 (2015) (often referred to as "*Steanhouse I*"), overruled on other grounds, *Steanhouse*, 500 Mich 453 (2017).

Although the propriety of rationalizing departures from the guidelines on a defendant's substance abuse issues may be problematic if unrelated to the crime for which the defendant was being sentenced, such is not the case here. Defendant was on probation for drinking and driving, was not permitted to drink alcohol as a term of his probation, and was legally intoxicated and had been driving when he was arrested for his most recent OWI.

The court's utilization of defendant's unaddressed substance issues in crafting a departure sentence does not entitle him to resentencing. The court's aforementioned colloquy indeed highlighted its opinion that defendant had not taken appropriate measures to mitigate the possible

antecedents of his crime. A reasonable jurist could infer that defendant's demonstrated failures or unwillingness to address his substance abuse contributed to his multiple convictions for OWI. The fact that defendant was not benefiting from the substance abuse programming, which was meant to address the personal antecedents that contributed to his crime, could be considered an "other factor" not addressed by the sentencing guidelines, *Dixon-Bey*, 321 Mich App at 524-525, that could be utilized to justify a departure from them. The court's opinion that defendant would not likely be rehabilitated, and that deterrence should be the goal of its sentence, was a justifiable conclusion given the facts presented to the court.

In considering the aforementioned justifications for departure, the court properly articulated why the sentence imposed was more proportionate to the offense and the offender than a different sentence would have been. *Dixon-Bey*, 321 Mich App at 524-525. The court was concerned with the deceptive attitude defendant took after he committed his OWI, his unmitigated substance abuse issues, which likely contributed to his probation violation, and its belief that defendant could not be easily rehabilitated, and needed to be punished and deterred from further crime. Given the sheer number of defendant's OWI convictions, the leniency the court showed by originally placing defendant in an alternative court system tailored for those who have substance abuse issues, defendant's inability to benefit from or abide by the program's rules, and the proximity in time between his third and most recent OWI (approximately a year), it cannot be said that the court abused its discretion in deciding that another attempt at rehabilitation was futile and that its departure sentence was reasonable.

Defendant also argues that in sentencing him, the court did not craft an individualized sentence as is required. He argues that the court's adherence to a local sentencing policy warrants a remand for a new sentencing. "A sentence is invalid if the court conforms the sentence to a local sentencing policy rather than imposing an individualized sentence." *People v Catanzarite*, 211 Mich App 573, 583; 536 NW2d 570 (1995), citing *People v Chapa*, 407 Mich 309, 309; 284 NW2d 340 (1979).

Defendant argues that the court's following statements constitute a local rule:

> Since rehabilitation hasn't worked, since following the rules hasn't worked, I have to look at for protection of society. And I'm going to protect society for every day I legally can.

In *Chapa*, the trial court sentenced the defendant to a minimum of eight years imprisonment for delivery of and conspiracy to deliver heroin. *Chapa*, 407 Mich at 310. The Supreme Court held that a localized court policy concerning heroin "remove[d] much of the discretion that the [trial] court might otherwise have relative to sentences" when it determined that it had an "obligation" to sentence defendant to prison. *Id*. The Court held that "[t]he sentencing judge erred here in limiting his discretion in accordance with the stated local policy." *Id*. at 311. The Court remanded the case for resentencing on that basis. *Id*.

In *People v Pennington*, 323 Mich App 452, 469; 917 NW2d 720 (2018), this Court chided a judge for adhering to a local policy of sentencing defendants who exercised their right to a jury trial at the high-end or maximum of the guidelines range. It vacated the defendant's sentence and ordered resentencing.

When compared with the trial court's adherence to a local sentencing policy in *Pennington*, the court's statement in this case is dissimilar and does not have the same legal implications. In *Pennington*, the trial court explicitly stated and intimated that it was adhering to a local policy of penalizing defendants who were offered plea deals, went to trial and were found guilty. The court was sentencing defendants more harshly for exercising their constitutional right to a trial. US Const, Am XI.

In this case, the court's statement did not explicitly or inexplicitly state or suggest that it was adhering to a local sentencing policy. If any inference were to be reasonably drawn from the court's statements, it would be that the court found defendant's failure to make progress with his substance abuse and criminal behavior, despite its previous provision of rehabilitative approaches rather than punitive ones, had been uncurbed, and demonstrated that defendant needed now to be punished. When read in context, the comments evidence that defendant personally needed to be deterred from his criminal behavior, and being deceitful about it, and that those in the community deserved protection. The court's closing comment that defendant's sentence needed to be the longest it could conceive to protect those in the community from one who repeatedly wished to drive drunk does not mean that the court failed to craft defendant an individualized sentence. The court was intimating that due to defendant's repeated failures on probation, i.e., his failure to benefit from substance abuse rehabilitation and the restrictive and monitored environment of probation, a departure sentence was warranted. The court's comments do not evidence the existence of a local sentencing policy, nor do they constitute an adherence to a local policy.

Affirmed.

/s/ David H. Sawyer
/s/ Mark J. Cavanagh
/s/ Kirsten Frank Kelly