PEOPLE v HANSFORD (AFTER REMAND)

Docket No. 104770. Argued January 14, 1997 (Calendar No. 7). Decided
    May 13, 1997.

    Clarence C. Hansford, Jr., was convicted by a jury in the Detroit
    Recorder's Court, Beverley Anne Jasper, J., of entering an occupied
    dwelling without the owner's permission and receiving or conceal-
    ing stolen property over $100. Thereafter, he pleaded guilty of
    being an habitual offender, fourth offense. The Court of Appeals,
    WHITE, P.J., and GRIBBS and D. B. LEIBER, JJ., affirmed the defend-
    ant's convictions in an unpublished opinion per curiam, but
    remanded the case for resentencing, finding the sentence imposed
    to be disproportionate (Docket No. 165364). In lieu of granting
    leave to appeal, the Supreme Court remanded the case to the Court
    of Appeals for reconsideration in light of People v Cervantes, 448
    Mich 620 (1995). 450 Mich 853 (1995). On remand, the Court of
    Appeals, WHITE, P.J., and GRIBBS, J. (SAWYER, J., dissenting), in an
    unpublished order, vacated the defendant's sentence and ordered
    resentencing, finding that the sentence constituted an abuse of dis-
    cretion (Docket No. 188370). The people appeal.

    In an opinion by Justice WEAVER, joined by Chief Justice MALLETT,
    and Justices BOYLE and RILEY, the Supreme Court held:

    Because of the serious nature of this crime, the defendant's
    extensive criminal history, and his clear inability to reform, the
    trial court did not abuse its discretion in sentencing the defendant
    to a prison term of forty to sixty years.

    1. Sentencing guidelines do not apply to the sentencing of habit-
    ual offenders. In reviewing sentences imposed for habitual offend-
    ers, the reviewing court must determine whether there has been an
    abuse of discretion.

    2. In this case, the defendant has an extensive record, a poor his-
    tory of community supervision, and was on parole when he com-
    mitted these offenses. A trial court does not abuse its discretion in
    giving a sentence within the statutory limits established by the Leg-
    islature when an habitual offender's underlying felony, in the con-
    text of his previous felonies, evidences that the defendant has an
    inability to conform his conduct to the laws of society. The sen-
    tence in this case was within the limits authorized by the Legisla-

ture for an habitual offender, fourth offense, under MCL 769.12(1)(a); MSA 28.1084(1)(a). It is clear from the record that prior attempts to rehabilitate the defendant have utterly failed and that community supervision is not effective for him.

Justice BRICKLEY, concurring, stated that while, as set forth in the dissent in *Cervantes*, the sentencing of habitual offenders should be tested by the principle of *People v Milbourn*, 435 Mich 630 (1990), in this case the defendant's criminal record justifies the sentence imposed consistent with *Milbourn*.

Reversed.

Justice KELLY, joined by Justice CAVANAGH, dissenting, stated that the trial court abused its discretion in sentencing the defendant to a prison term of forty to sixty years. When the gravity of the offense and the defendant's previous contacts with the criminal justice system are considered, the sentence violates the proportionality standard set forth in *Milbourn*.

The *Milbourn* standard should be applied to the sentencing of habitual offenders. *Milbourn* intended that the sentencing guidelines be a starting point in determining whether a nonhabitual sentence is disproportionate. It also anticipated that its proportionality standard would apply to crimes not covered by the guidelines, such as those of habitual offenders. Case law has interpreted *Milbourn* to have intended that review of an habitual offender sentence is limited to considering whether the sentence violates *Milbourn's* principle of proportionality. Optimum appellate review of habitual offender sentences requires the objectiveness of a proportionality standard at least as much as, if not more than, sentences subject to the guidelines. In setting a different standard for sentence review for habitual offenders, the majority risks taking a step backwards. Sentencing judges' differing personal backgrounds, experiences, and viewpoints surely will give rise to disparate sentences among habitual offenders as they did among nonhabitual offenders before *Milbourn*. The fact that no sentencing guidelines exist for habitual offenders leaves the sentencing judge without a valuable gauge to measure the appropriateness of the sentence imposed. Because the Legislature has indicated an intention that sentencing guidelines one day will be used in habitual offender sentencing, in the interim, habitual offenders should have the benefit of objective sentence review. When applied to the sentence in this case, the standard reveals that the sentence is disproportionate.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *John D. O'Hair*, Prosecuting Attorney, *Timothy A. Baughman*, Chief,

Research, Training and Appeals, and *Janice M. Joyce Bartee*, Assistant Prosecuting Attorney, for the people.

*Monsey G. Wilson* for the defendant.

AFTER REMAND

WEAVER, J. In his appeal from a Court of Appeals decision ordering that the defendant be resentenced, the prosecutor based his arguments on the premise that this Court should overrule *People v Milbourn*, 435 Mich 630; 461 NW2d 1 (1990). We decline to do so because the resolution of this case does not require reexamination of *Milbourn*. We reverse the Court of Appeals order of October 16, 1995, that vacated defendant's sentence and ordered resentencing, and reinstate defendant's sentence.

I

Following a jury trial, defendant was found guilty of entering an occupied dwelling without the owner's permission[1] and receiving or concealing stolen property over $100.[2] Defendant then pleaded guilty of being an habitual offender, fourth offense,[3] and was sentenced to a prison term of forty to sixty years.

Defendant appealed, and the Court of Appeals affirmed defendant's convictions, but remanded for resentencing, finding the sentence of forty to sixty years to be disproportionate.

---

[1] MCL 750.115; MSA 28.310.

[2] MCL 750.535; MSA 28.803.

[3] MCL 769.12; MSA 28.1084.

The prosecutor then applied for leave to appeal in this Court. In lieu of granting leave to appeal, we remanded the case to the Court of Appeals for reconsideration in light of *People v Cervantes*, 448 Mich 620; 532 NW2d 831 (1995). The Court of Appeals issued an order finding that the sentence constituted an abuse of discretion and remanded for resentencing. The prosecutor sought leave to appeal from the order, which this Court has now granted.

II

In overturning defendant's sentence in its original opinion, April 11, 1995, the Court of Appeals found the sentence to be disproportionate.[4] We disagree.

We first reaffirm our holding in *People v Cervantes*, *supra*, that the sentencing guidelines do not apply to the sentencing of habitual offenders.[5] In reviewing

---

[4]   Lastly, defendant asserts that his 40 to 60 year sentence is disproportionate. We agree. The guidelines recommend a minimum sentence of 1 to 3 years for the underlying offense. The guidelines, however, are at most a reference point in assessing the proportionality of an habitual offender's sentence. While defendant's minimum sentence of 40 years greatly exceeds the highest recommended minimum of 3 years, the habitual statute allows for such a sentence, and indeed allows for a life sentence. Such sentences, however, should be reserved for the most egregious offenders.

Defendant does, to be sure, have an extensive record and a poor history of community supervision. Moreover, his stealing from his hospitalized mother is particularly offensive. Nonetheless, defendant's prior record consists exclusively of larcenies and stolen property offenses, and a misdemeanor fleeing and eluding offense. His longest sentence, 3 to 7 years, was imposed in 1988. Under the circumstances, a sentence of 40 to 60 years is *disproportionate and resentencing is required.* [Unpublished opinion per curiam (Docket No. 165364) (emphasis added).]

[5] We note that three members of this Court have held that the sentencing guidelines do not have a legislative mandate and are therefore without the force of law. See *People v Mitchell*, 454 Mich 145, 175; 560 NW2d 600 (1997) and *Negri v Slotkin*, 397 Mich 105; 244 NW2d 98 (1976).

sentences imposed for habitual offenders, the review-ing court must determine whether there has been an abuse of discretion. *Id.* at 627. Applying this standard, we conclude that the trial judge did not abuse his dis-cretion in sentencing defendant to a prison term of forty to sixty years.[6]

The Court of Appeals summed it up well when it noted that "Defendant does, to be sure, have an extensive record and a poor history of community supervision." On October 11, 1976, he was convicted of attempted larceny from a building and sentenced to two years' probation. On June 14, 1977, defendant was convicted of attempted receiving and concealing over $100 and was sentenced to 1.5 to 2.5 years in prison. Only two months later, on August 22, 1977, defendant was convicted of attempted larceny from a motor vehicle and sentenced to 1.5 to 2.5 years. Then on September 4, 1980, defendant was convicted of fleeing and eluding and was sentenced to a fine of $185 or nineteen days. Defendant was convicted of receiving and concealing stolen property and sen-tenced to six months in the Detroit House of Correc-tions on March 26, 1981. On August 3, 1982, defend-ant was convicted of two counts of receiving and con-cealing stolen property over $100. Defendant was sentenced to three years probation on April 15, 1985. On November 5, 1985, defendant was convicted of a violation of probation and sentenced to ninety days in jail. Next, on July 17, 1988, defendant was convicted

---

[6] The trial court initially sentenced defendant to ninety days in jail for entering without the owner's permission and three to five years for receiv-ing and concealing stolen property. These sentences were vacated, and the trial judge sentenced defendant to forty to sixty years in prison for being an habitual offender, fourth offense.

of larceny from a motor vehicle and was sentenced to three to seven years. Defendant was then placed at a correction center in July, 1990, from which he escaped, and to which he was returned in February 1991.

Defendant was placed on parole · on March 31, 1992, but was listed as an absconder by July 9, 1992. Defendant was still on parole when he committed the instant offense in September of 1992. It is clear from defendant's record that prior attempts to rehabilitate him have utterly failed, and that community supervision is not effective for him.

In addition to acknowledging defendant's extensive criminal record, the Court of Appeals also recognized that the facts of the instant case are "particularly offensive." While defendant's mother was hospitalized with a severe asthma attack, defendant went into her hospital room and removed her keys from her purse. He then stole his mother's automobile, went to her house, and took thousands of dollars worth of appliances, jewelry, and furs.

In *Cervantes, supra* at 627-628, we held that a trial court did not abuse its discretion in giving a "significant" sentence to an habitual offender where the trial court considered the defendant's extensive criminal history and his potential for rehabilitation.[7] In the

---

[7] We decided that the trial court did not abuse its discretion in sentencing a defendant to ten to twenty years for breaking and entering and four to eight years for felonious assault:

[The trial court] acted reasonably by considering both defendant's extensive criminal history and his potential for rehabilitation. The trial judge was correct in performing this analysis because "[u]nder our present framework of indeterminate sentencing, sentences are based more on an assessment of the offender than the offense." *People v Mazzie*, 429 Mich 29, 33; 413 NW2d 1 (1987).

instant case, the underlying felony was defendant's *eighth*, which was committed while on parole from prison where he was serving a sentence for the commission of a different felony. We believe that a trial court does not abuse its discretion in giving a sentence within the statutory limits established by the Legislature when an habitual offender's underlying felony, in the context of his previous felonies, evidences that the defendant has an inability to conform his conduct to the laws of society. The sentence in this particular case was within the limits authorized by the Legislature for an habitual offender, fourth offense, under MCL 769.12(1)(a); MSA 28.1084(1)(a).[8] The serious nature of this crime, defendant's extensive criminal history, and his clear inability to reform, convince us that the trial court did not abuse its discretion in imposing defendant's sentence.

---

Moreover, the trial court in *Cervantes* considered the fact that the underlying crime was "serious" and that the defendant "had clearly demonstrated his lack of intent to reform by violating his probation." *Id.* at 628.

[8] MCL 769.12(1); MSA 28.1084(1) provides in pertinent part:

If a person has been convicted of any combination of 3 or more felonies or attempts to commit felonies, whether the convictions occurred in this state or would have been felonies or attempts to commit felonies in this state if obtained in this state, and that person commits a subsequent felony within this state, the person shall be punished upon conviction of the subsequent felony and sentencing under section 13 of this chapter as follows:

(a) If the subsequent felony is punishable upon a first conviction by imprisonment for a maximum term of 5 years or more or for life, *the court*, except as otherwise provided in this section or section 1 of chapter XI, *may sentence the person upon conviction of the fourth or subsequent offense to imprisonment for life or for a lesser term*. [Emphasis added.]

Defendant's underlying felony, receiving and concealing stolen property in excess of $100 in violation of MCL 750.535; MSA 28.803, is a felony that carries a maximum punishment of five years in prison.

III

Accordingly, we reverse the Court of Appeals order of October 16, 1995, and reinstate defendant's sentence.

MALLETT, C.J., and BOYLE and RILEY, JJ., concurred with WEAVER, J.

BRICKLEY, J. (*concurring*). I continue to adhere to the dissenting opinion in *People v Cervantes*, 448 Mich 620, 630-637; 532 NW2d 831 (1995), to the effect that the sentencing of habitual offenders should be tested by the principle set forth in *People v Milbourn*, 435 Mich 630; 461 NW2d 1 (1990). Nonetheless, I agree with the majority in this case that the Court of Appeals should be reversed. I find that the defendant's criminal record justifies the sentence handed down in this case and, accordingly, is not disproportionate under the *Milbourn* standard.

KELLY, J. (*dissenting*). I disagree with the majority's conclusion and believe that the trial court abused its discretion in sentencing the defendant to a prison term of forty to sixty years. When the gravity of the offense and defendant's previous contacts with the criminal justice system are considered, the sentence violates the proportionality standard set forth in *People v Milbourn*, 435 Mich 630; 461 NW2d 1 (1990). Consequently, I would affirm the decision of the Court of Appeals and remand this case for resentencing.

I

The majority disregards the *Milbourn* standard and establishes a new standard of review for the sentencing of habitual offenders:

[A] trial court does not abuse its discretion in giving a sentence within the statutory limits established by the Legislature when an habitual offender's underlying felony, in the context of his previous felonies, evidences that the defendant has an inability to conform his conduct to the laws of society. [*Ante* at 326.]

The majority provides no rationale for not using the *Milbourn* proportionality standard.

I dissent because I believe that the *Milbourn* standard should be applied to the sentencing of habitual offenders. *Milbourn* intended that the sentencing guidelines be a starting point in determining whether a nonhabitual sentence is disproportionate. It also anticipated that its proportionality standard would apply to crimes not covered by the guidelines, such as those of habitual offenders. *Id.* at 661, n 29. Consequently, it has been interpreted to intend that "review of an habitual offender sentence is limited to considering whether the sentence violates the principle of proportionality set forth in [*Milbourn*]." *People v Gatewood (On Remand)*, 216 Mich App 559, 560; 550 NW2d 265 (1996).

The justifications for the standard that is laid out in *Milbourn* apply as forcefully to habitual offenders as to nonhabitual offenders. In adopting the standard of proportionality, the *Milbourn* Court considered the factors used by the Legislature in formulating sentences. It reasoned that the Legislature weighed both the severity and nature of the offense and the background of the offender in setting the appropriate sentence for a crime. It then determined that a sentence imposed by a trial judge was an abuse of discretion if it was not "proportionate" in light of the offense and the offender.

Before *Milbourn*, an appellate court would find an abuse of discretion only if the sentence "shock[ed] the conscience." *People v Coles*, 417 Mich 523, 550; 339 NW2d 440 (1983). The *Milbourn* Court noted that appellate courts extend great deference to the sentencing judge when making abuse of discretion determinations. If an abuse of discretion standard is narrowly construed, appellate review may avoid altogether the consideration of disparity between the sentence under review and others given for the same offense. *Id.* at 647. Consequently, the Court reasoned that a proportionality standard provides a more objective review of a trial judge's exercise of sentencing discretion than the "shock the conscience" standard.

Another justification for the proportionality standard was that it checks judicial prejudices, including racial, gender and social discriminations, that sometimes arise in the sentencing process. *Id.* at 646.[1] The standard accomplishes more than fostering uniform sentences among similarly situated offenders. *Id.* at 645-646. It protects the criminal justice system from the biases associated with differing philosophies and protects against over-sentencing. *Id.* at 645-646, 653.

The majority's rule in the instant case appears to disregard the *Milbourn* Court's concerns. In setting a different standard for sentence review for habitual offenders, it risks taking a step backwards. Sentencing judges' differing personal backgrounds, experiences, and viewpoints will surely give rise to disparate sentences among habitual offenders as they did among nonhabitual offenders before *Milbourn*. *Id.* at

---

[1] Citing Nagel, *Structuring sentencing discretion: The new federal sentencing guidelines*, 80 J Crim L & Criminology 883-884 (1990).

645. The fact that no sentencing guidelines exist for habitual offenders leaves the sentencing judge without a valuable gauge to measure the appropriateness of the sentence imposed. Therefore, optimum appellate review of habitual offender sentences requires the objectiveness of a proportionality standard at least as much as, if not more than, sentences subject to the guidelines.

The Legislature has created a sentencing commission to develop sentencing guidelines. MCL 769.32-769.34; MSA 28.1097(3.2)-28.1097(3.4). These guidelines will supersede the current sentencing guidelines for first-time offenders. MCL 769.34(1); MSA 28.1097(3.4)(1). They will also establish separate sentence ranges for habitual offenders. MCL 769.33(e)(vii); MSA 28.1097(3.3)(e)(vii). Thus, the Legislature intends that sentencing guidelines will one day be used in habitual offender sentencing. In the interim, habitual offenders should have the benefit of objective sentence review. The proportionality standard articulated in *Milbourn* should apply.

II

In reviewing the habitual offender sentence using the *Milbourn* proportionality standard, it was appropriate for the Court of Appeals to consider Hansford's background and the nature of his offense. *Milbourn* at 650. It noted:

> Defendant does, to be sure, have an extensive record and a poor history of community supervision. Moreover, his stealing from his hospitalized mother is particularly offensive. [Unpublished opinion per curiam, issued April 11, 1995 (Docket No. 165364), slip op at 2.]

I agree that defendant exhibits a continuing disregard for the criminal justice system and a low probability of speedy rehabilitation. His persistent criminality, even during parole or probation, clearly warrants the conclusion that he is as yet unable or unwilling to abide by the rules of the criminal justice system.

On the other hand, Hansford's crimes were nonviolent: larceny, receiving stolen property, and a misdemeanor fleeing and eluding offense. The court sentenced him to probation for three of his offenses. He received a fine of $185 or nineteen days for a fourth. His longest sentence was three to seven years. In addition, defendant's criminal acts have not "escalated from nonviolent robberies into dangerous weapon assaults against police officers." *People v Cervantes*, 448 Mich 620, 628; 532 NW2d 831 (1995). Should he have no further opportunities to live outside the prison system? A forty-year minimum term for a thirty-four-year-old is a life sentence.

Defendant's sentence must also be proportionate to his underlying offense. *Milbourn* at 650. By way of comparison, in *People v Odendahl*, 200 Mich App 539, 541; 505 NW2d 16 (1993), the Court of Appeals held that a ten- to fifteen-year sentence for being a fourth habitual offender was not disproportionate under the circumstances. Odendahl had been convicted of felonious assault and possession of a firearm during the commission of a felony. *Id.* at 540. The Court of Appeals reasoned:

> First, the evidence indicates that defendant argued with and choked the victim. After the victim fled from him, defendant chased her and then shot her three times at close range. Defendant sought aid for the victim following the

shooting, but only after returning the rifle. Further, he asked the victim not to report him to the authorities. Second, defendant has an extensive criminal history, including four previous felonies and five misdemeanors. Some of these offenses involved assault crimes. [*Id.* at 541.]

Hansford was convicted of entering an occupied dwelling without the owner's permission and receiving stolen property over $100. He pleaded guilty of being a fourth habitual offender. Unlike Odendahl's underlying violent offenses, Hansford's offenses are nonviolent. Yet, remarkably, Hansford's minimum sentence is thirty years greater than Odendahl's. As the Court noted in *Milbourn*:

"Unjustified disparities promote disrespect for the criminal justice system and resentment among prisoners, thus impairing their morale and motivation for rehabilitation." [*Id.* at 645.]

In light of these factors, I conclude that the Court of Appeals correctly found that the trial court abused its discretion in sentencing defendant to forty to sixty years.

The majority provides too few reasons for its conclusion that this extreme sentence is not an abuse of discretion. It mentions defendant's extensive record of thievery, that he stole from the home of his hospitalized mother, and his "inability to conform his conduct to the laws of society."

The majority notes that the sentence is within the statutory maximum, life or a lesser term, for a fourth habitual offender. The implication is that any sentence within statutory limits would be acceptable. However, the maximum punishment under MCL 769.12(1); MSA 28.1084(1) applies to nonviolent as well as violent habitual fourth offenders. Defendant's

crimes are not among the worst offenses covered by the applicable habitual offender statute. MCL 769.12(1); MSA 28.1084(1). Defendant's forty- to sixty-year sentence makes his offenses appear far greater than they are, and thus, leaves little room " 'to operate' from the least to the most serious situations" as contemplated by *Milbourn. People v Merriweather*, 447 Mich 799, 806; 527 NW2d 460 (1994).

The majority invites the same "over sentencing" that the *Milbourn* Court criticized when it wrote:

> Just as the routine award of high grades demeans academic value, the routine imposition of maximum sentences would send a garbled message of society's views on the relative blameworthiness of various commissions of a given crime to the public as well as to the ultimate consumer of judicial sentencing behavior—the convicted offender. [*Id.* at 645-646.]

It sends an undesirable message to both the defendant and to society.

### III

*Milbourn* established the standard of sentence review in Michigan: proportionality. I see no need for a new and different standard for habitual offenders. When applied to the sentence in this case, the standard reveals the sentence as disproportionate. It should not stand. Consequently, I would affirm the judgment of the Court of Appeals and remand this case for resentencing.

CAVANAGH, J., concurred with KELLY, J.