*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

THOMAS WILLIAM STAMBAUGH,

       Defendant-Appellant.

UNPUBLISHED
March 14, 2024

No. 364788
St. Joseph Circuit Court
LC No. 20-023413-FH

Before: M. J. KELLY, P.J., and MARKEY and CAMERON, JJ.

PER CURIAM.

Defendant appeals by delayed leave granted[1] his guilty-plea conviction of operating a motor vehicle with a revoked license causing death (OWRLCD), MCL 257.904(4). The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to 19 to 40 years' imprisonment. We affirm.

## I. BACKGROUND

On June 18, 2020, defendant was driving a truck when he struck and ran over the victim, Laura Jacobs, in a grocery store parking lot. Jacobs was walking toward her car after returning her shopping cart to a cart corral when defendant hit her from behind with the vehicle. The blow caused Jacobs to arch backward over the truck's hood. She was then run over because defendant continued to drive forward before speeding away. A witness observed that Jacobs's eyes were open, that she had a faint pulse, that she was convulsing, and that blood was filling her mouth and ears. Responding police officers indicated that Jacobs had severe trauma to her face and was bleeding from her nose and ears. The witness provided chest compressions, and emergency medical personnel who arrived on the scene attempted but were unable to revive Jacobs. She was

---

[1] *People v Stambaugh*, unpublished order of the Court of Appeals, entered March 30, 2023 (Docket No. 364788).

pronounced dead at the scene. At the time of the incident, defendant's license was revoked. Defendant did not own the truck, nor had it been loaned to him. It was reported as stolen.

On July 17, 2020, defendant was arrested on warrants for absconding on probation and parole. On July 20, 2020, police interrogated defendant regarding the hit and run accident after they had developed some evidence pointing to defendant as a possible suspect. Defendant initially denied having any knowledge about the truck and the accident; however, he later admitted to driving the truck and striking Jacobs in the grocery store parking lot back on June 18, 2020. He claimed that he thought he had simply hit a curb, but when his sole passenger informed defendant that he struck a person, he panicked and drove away. Defendant expressed to the officer that he was extremely sorry and that he wanted Jacobs's family to know the extent of his remorse. In October 2020, as part of a plea agreement, defendant pleaded guilty as a fourth-offense habitual offender to OWRLCD. We note that defendant had three prior felony convictions and nine prior misdemeanor convictions.

Defendant's minimum sentence guidelines range was 58 to 228 months' imprisonment, and on November 13, 2020, the trial court imposed a minimum sentence at the very top end of the guidelines range, 228 months (19 years), with the maximum prison sentence set at 40 years. Defendant was resentenced on August 1, 2022, on the basis of a stipulation that defendant's prior counsel at sentencing had been elected county prosecutor at the time of the earlier sentencing hearing absent a waiver by defendant of any conflict of interest. Additionally, defendant had not waived his constitutional right to be personally present at the sentencing hearing, which had been conducted via ZOOM. Before resentencing, defendant submitted a sentencing memorandum with a 15-page attached report from Monique Dake, who is a licensed master social worker and certified advanced alcohol and drug counselor. She asserted that defendant had been raised by drug-addicted parents in an impoverished and violent home environment and that he started regularly using methamphetamine—the drug his parents used—at least as early as age seven when he accidently set his bed on fire when smoking the drug. Defendant often went to school dirty and disheveled, resulting in ridicule and teasing by his classmates. Eventually, at age 14, he went into foster car, where he continued to use methamphetamine with his older foster brother. Dake concluded her report as follows:

> Thomas is capable of rehabilitation and transformation. Science has shown that even the most complex trauma and addictions can be resolved with the right treatment, enough time, and commitment. Thomas is already showing improvement. A more proximate earliest release date will allow him access to the programming he needs and thereby advance the goal of rehabilitation.

Defendant's minimum sentence guidelines range was once again calculated at 58 to 228 months' imprisonment, and the trial court imposed the same sentence of 228 months or 19 years to 40 years' imprisonment. The trial court engaged in a fairly lengthy and thoughtful discussion of the reasons for the sentence. The trial court first noted that despite claims to the contrary, defendant had "been offered chances at treatment over and over again." The court then acknowledged the length and extent of defendant's addiction to drugs and how the addiction had stunted him mentally from a very young age. But, according to the trial court, "that's going to continue for the rest of his life and you don't get to pull that card out and say . . . I was a victim [as a] child." The court next discussed the fact that defendant had lost the rights to his own children

because defendant "had absolutely no ability to control [his] behavior." The trial court then confronted defendant's actions in absconding and leaving a rehabilitation center where he could have improved his life. The court was insulted by defendant's contention that he left the center because there were too may drugs available at the location. The trial court was insulted because defendant was one of the persons smuggling drugs into and using them at the center. The trial court admonished defendant, stating, "It's because of you [that] people have trouble at the center[—][a] jewel in our system that keeps people from going to prison, you just threw away because your addiction [has] so controlled your behavior you couldn't stop yourself."

The trial court additionally stated and reasoned:

> That's not an excuse you get to pull out, I'm sorry l ran over the woman, I have an addiction. You shouldn't be driving, you shouldn't have been driving. . . . Instead, every time something happens you jump on the victim's stance and say poor me, I've got to resort back to methamphetamine use, I had a bad day. . . . You've got to find another way to deal with it than jumping back into methamphetamine or coming into court. It would be great if we had a 20 page mitigation statement or a statement about the life of the woman you ran over, instead we don't know anything about her, we just know that she was run over in the middle of a parking lot in the middle of the day by a gentleman that has been out of prison and on parole twice, that absconded both times and was given opportunities again and again and continued to do it. So, long story short, no, I'm not going to change my sentence. I thought about it the first time, I found it to be fair. . . . I'm sentencing you to the top end of the guidelines as I find that it is a fair sentence. That I don't find that you have the ability to change your behavior no matter how many opportunities you've had to change and that you will not change your – whether it's fair or not it's a fact of life . . . .

## II. ANALYSIS AND RESOLUTION

We take defendant's arguments on appeal out of order, first addressing his contention that the introductory sentence of MCL 769.34(10) is unconstitutional. In pertinent part, MCL 769.34(10) provides that "[i]f a minimum sentence is within the appropriate guidelines sentence range, the court of appeals shall affirm that sentence and shall not remand for resentencing absent an error in scoring the sentencing guidelines or inaccurate information relied upon in determining the defendant's sentence." While this appeal was pending, our Supreme Court issued an opinion holding that the first sentence of MCL 769.34(10) is unconstitutional. *People v Posey*, 512 Mich 317, 326 (lead opinion by BOLDEN, J., joined by BERNSTEIN, J.), 361 (CAVANAGH, J.), 376 (WELCH, J.); ___ NW2d ___ (2023). On remand to this Court, the *Posey* panel, noting the Justices' varied opinions, summarized the Supreme Court's ultimate holding as follows:

> Furthermore, the latter three Justices agreed with Justice BOLDEN's pronouncements in her lead opinion that within-guidelines sentences are to be reviewed for reasonableness, that reasonableness review requires a determination whether a sentence was proportionate, that there is a nonbinding presumption of proportionality, meaning that a within-guidelines sentence is not binding on the Court of Appeals, that the defendant bears the burden of demonstrating that their

within-guidelines sentence is unreasonable or disproportionate, and that a within-guidelines sentence may indeed be disproportionate or unreasonable. [*People v Posey (On Remand)*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 345491); slip op at 2 (quotation marks and citations omitted).]

Accordingly, defendant's constitutional argument with respect to MCL 769.34(10) has been decided in his favor by our Supreme Court, and we shall resolve this appeal under the new principles espoused in *Posey* when applicable.

In this case, defendant argues that his within-guidelines sentence is disproportionate. He also contends that the 19-year minimum sentence constituted cruel and/or unusual punishment under the state and federal constitutions because the sentence was for a mere strict liability offense, OWRLCD. Additionally, defendant maintains that the trial court abused its discretion by applying the habitual-offender-enhancement provision in MCL 777.21(3) for purposes of increasing the top end of the minimum sentence guidelines range. Finally, defendant asserts that it was fundamentally unfair and thus a violation of due process to weigh defendant's three prior felony convictions when scoring the prior record variables (PRVs) and setting the guidelines range, and to then again consider them in relation to the habitual-offender-enhancement provision in MCL 777.21(3).

We begin with defendant's arguments premised on MCL 777.21(3). This Court reviews de novo constitutional issues, including whether a defendant's right to due process was violated. *People v Smith*, 498 Mich 466, 475; 870 NW2d 299 (2015). In *People v Tadgerson*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 360094); slip op at 4-5, this Court observed:

> We review de novo issues of statutory construction. When interpreting a statute, this Court first focuses on the plain language of the statutory provision, striving to accomplish the goal of giving effect to the intent of the Legislature. We must read individual words and phrases in the context of the entire legislative scheme, examining the statute as a whole. When the language of a statute is clear and unambiguous, the statute must be enforced as written, and no further judicial construction is required or permitted. If at all possible, every word in a statute should be given meaning and no word should be rendered nugatory or treated as surplusage. When there is a potential conflict between statutes, this Court must, to the extent reasonably possible, harmonize them to give effect to the intent of the Legislature. [Citations omitted.]

Although a trial court is no longer bound by the applicable minimum sentence guidelines range, a court must continue to consult and consider the guidelines range when fashioning a defendant's sentence. *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). A trial court determines the recommended guidelines range for a particular offense by scoring the PRVs and the Offense Variables (OVs) and applying those scores to the appropriate sentencing grid for the offense. MCL 777.21(1)(a)-(c). PRVs 1 through 5 require a trial court to consider a defendant's historical criminal record, including prior felony convictions, misdemeanor convictions, and juvenile adjudications, falling within a certain timeframe. MCL 777.50 through MCL 777.55. In this case, defendant was assessed 75 points for PRV 1 for "3 or more prior high severity felony convictions." MCL 777.51(1)(a). Taking into consideration that assessment and

the scoring of the remaining PRVs, along with the scoring of the OVs, defendant's guidelines range, without yet contemplating his prior felony convictions for purposes of MCL 777.21(3), would be 58 to 114 months in prison given that OWLRCD is a Class C offense. See MCL 777.12h; MCL 777.64.[2] Because defendant was a fourth-offense habitual offender, the trial court increased the top end or upper limit of the guidelines range from 114 months to 228 months under MCL 777.21(3), which provides, in pertinent part:

> If the offender is being sentenced under section 10, 11, or 12 of chapter IX, determine the offense category, offense class, offense variable level, and prior record variable level based on the underlying offense. To determine the recommended minimum sentence range, increase the upper limit of the recommended minimum sentence range determined . . . for the underlying offense as follows:
>
> * * *
>
> (c) If the offender is being sentenced for a fourth or subsequent felony, 100%.

According to defendant, MCL 777.21(3) was triggered because the trial court did in fact increase his maximum sentence under MCL 769.12 given defendant's status as a fourth-offense habitual offender. Relevant here, MCL 769.12 states:

> (1) If a person has been convicted of any combination of 3 or more felonies . . . and that person commits a subsequent felony within this state, the person shall be punished upon conviction of the subsequent felony and sentencing under section 13 of this chapter as follows:
>
> * * *
>
> (b) If the subsequent felony is punishable upon a first conviction by imprisonment for a maximum term of 5 years or more or for life, the court . . . *may* sentence the person to imprisonment for life or for a lesser term. [Emphasis added.[3]]

Defendant argues that the trial court had the discretion to enhance or not enhance the maximum sentence under MCL 769.12(1)(b) and that if the court had not increased the maximum sentence pursuant to MCL 769.12(1)(b), the court would not have been able to extend the upper limit of the guidelines range for purposes of MCL 777.21(3) ("*If* the offender is being sentenced

---

[2] Defendant's total PRV score was 100 points, placing him at PRV level F (highest level), and his total OV score was 51 points, placing him at OV level V.

[3] The offense of OWRLCD is punishable by a maximum prison term of 15 years. MCL 257.904(4).

under section 10, 11, or 12 . . . .") (emphasis added). And defendant contends that the trial court abused its discretion by enhancing or increasing defendant's maximum sentence under MCL 769.12(1)(b), thereby also committing error by applying MCL 777.21(3)(c) to increase the upper end of the guidelines range from 114 to 228 months. Defendant maintains that the court abused its discretion given defendant's serious childhood trauma, his early addiction to methamphetamines, the fact that his three prior felony convictions were for nonviolent drug offenses, and considering that OWRLCD is a strict liability offense.

The Michigan Supreme Court has stated that a trial court, unless otherwise indicated, is not bound by law to increase a defendant's maximum sentence under the habitual-offender statutes; rather, "[a]pplication of the enhanced maximum sentence is discretionary, not mandatory." *People v Bonilla-Machado*, 489 Mich 412, 416; 803 NW2d 217 (2011). Defendant relies on *People v Hansford (After Remand)*, 454 Mich 320, 326; 562 NW2d 460 (1997), in which our Supreme Court explained:

> [W]e believe that a trial court does not abuse its discretion in giving a sentence within the statutory limits established by the Legislature when an habitual offender's underlying felony, in the context of his previous felonies, evidences that the defendant has an inability to conform his conduct to the laws of society. The sentence in this particular case was within the limits authorized by the Legislature for an habitual offender, fourth offense, under MCL 769.12[]. The serious nature of this crime, defendant's extensive criminal history, and his clear inability to reform, convince us that the trial court did not abuse its discretion in imposing defendant's sentence.

Assuming for the sake of argument that the analytical structure or reasoning of defendant's argument is legally sound, we conclude that there was no abuse of discretion in enhancing defendant's sentence. As reflected by defendant's extensive criminal history and as recognized by the trial court, the record clearly demonstrates that defendant has an inability to conform his conduct to the laws of society. We are not unsympathetic to defendant's horrific childhood, but, as emphasized by the trial court, it cannot repeatedly be used as an excuse for continuing criminal behavior. Moreover, although OWRLCD may be a strict liability offense, it is nonetheless a very serious crime—Laura Jacobs lost her life. It is inescapable that defendant caused Jacobs's death because he chose to engage in legally-prohibited conduct—driving a motor vehicle with a revoked license. There is no indication that Jacobs did anything improper that contributed to her death.[4] In sum, we hold that the trial court did not abuse its discretion by enhancing defendant's maximum sentence and by increasing the upper limit of the minimum guidelines range to 19 years' imprisonment under, respectively, MCL 769.12(1)(b) and MCL 777.21(3)(c), on the basis of defendant's status as a fourth-offense habitual offender.

---

[4] A person who operates a motor vehicle with a revoked license "and who, by operation of that motor vehicle, *causes* the death of another person is guilty of a felony[.]" (Emphasis added.) "[T]he defendant's operation of the vehicle must have been a factual cause of the . . . death[.]" M Crim JI 15.16a (setting forth the elements of OWRLCD).

We next address defendant's assertion that it was fundamentally unfair and thus a violation of due process to weigh defendant's three prior felony convictions when scoring the PRVs and calculating the guidelines range, and to then again consider them in relation to the habitual-offender-enhancement provision in MCL 777.21(3). We initially find that defendant fails to cite adequate supporting authority for his argument. "It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *People v Waclawski*, 286 Mich App 634, 679; 780 NW2d 321 (2009) (quotation marks and citation omitted).

Moreover, we conclude that defendant's argument fails on a substantive level. Due process guarantees fundamental fairness with respect to sentencing. See *People v Beck*, 504 Mich 605, 626; 939 NW2d 213 (2019). Simply because prior felony convictions can have a two-fold effect on calculating a minimum sentence guidelines range does not mean that the effect is fundamentally unfair. If prior felony convictions can increase a defendant's maximum sentence, see MCL 769.10 through MCL 769.12, a corresponding increase in the upper limit of the guidelines range under MCL 777.21(3) is perfectly logical and fair even though the original guidelines range was shaped, in part, by those same felony convictions. But even were it constitutionally problematic, the *advisory-only* nature of the guidelines, *Lockridge*, 498 Mich.at 399, eradicates the presumed constitutional infirmity. Ultimately, the only constitutional demand is that a sentence be reasonable, i.e., proportionate to the circumstances surrounding the offense and the offender. *People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017).[5] This principle now encompasses within-guidelines sentences. *Posey*, 512 Mich at 326, 361, and 376.

With respect to defendant's argument that the within-guidelines minimum sentence was unreasonable and disproportionate, "a court may consider all record evidence, including the contents of a [presentence investigation report], plea admissions, and testimony presented at a preliminary examination." *People v McChester*, 310 Mich App 354, 358; 873 NW2d 646 (2015). "An appropriate sentence should give consideration to the reformation of the offender, the protection of society, the discipline of the offender, and the deterrence of others from committing the same offense." *People v Boykin*, 510 Mich 171, 183; 987 NW2d 58 (2022). "The premise of our system of criminal justice is that, everything else being equal, the more egregious the offense, and the more recidivist the criminal, the greater the punishment." *People v Babcock*, 469 Mich 247, 263; 666 NW2d 231 (2003). The key test is not whether a sentence departs from or adheres to the guidelines range but whether the sentence is proportionate to the seriousness of the matter. *Steanhouse*, 500 Mich at 472. With respect to proportionality, the Supreme Court in *People v*

---

[5] The Supreme Court in *Steanhouse*, 500 Mich at 459-460, ruled:

> [T]he proper inquiry when reviewing a sentence for reasonableness is whether the trial court abused its discretion by violating the principle of proportionality set forth in *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990), which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender. [Quotation marks omitted.]

*Milbourn*, 435 Mich 630, 668; 461 NW2d 1 (1990), "observed that the Legislature has determined to visit the stiffest punishment against persons who have demonstrated an unwillingness to obey the law after prior encounters with the criminal justice system."

In *People v Lampe*, 327 Mich App 104, 126; 933 NW2d 314 (2019), this Court indicated that the factors that may be considered by a trial court under the proportionality test include, but are not limited to, the following:

> (1) the seriousness of the offense; (2) factors that were inadequately considered by the guidelines; and (3) factors not considered by the guidelines, such as the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation. [Quotation marks and citation omitted.]

In this case, we hold that the 19-year minimum sentence was proportionate to the circumstances surrounding the offense and the offender. With respect to defendant's record, he is plainly a recidivist criminal who has clearly demonstrated an unwillingness to obey the law after numerous previous encounters with the criminal justice system. The trial court realized that defendant's reformation could not be accomplished by another slap on the wrist and that a lengthy prison sentence was necessary to protect society and end any danger posed by defendant's out-of-control drug abuse and addiction. The trial court did not minimize defendant's dysfunctional and nightmarish upbringing; rather, the court, lamenting its own past decisions to give defendant another chance, concluded that defendant, for now, had exhausted his opportunities to turn his life around.[6] With regard to the offense, we reiterate our earlier comments that this was a serious offense in which a person died regardless of whether defendant may have lacked any criminal intent. Because defendant chose to drive illegally, Jacobs lost her life. Defendant was the sole cause of her death. Defendant compounded his wrongdoing by speeding away from the scene, demonstrating a complete lack of concern for Jacobs. We are a bit frustrated with defendant's efforts on appeal to downplay the graveness of his conduct. In sum, we hold that defendant's sentence of 19 to 40 years' imprisonment was proportionate and that the trial court did not abuse its discretion by imposing the sentence. Defendant has not met his burden of overcoming the nonbinding presumption that the within-guidelines minimum sentence of 19 years was proportional. See *Posey (On Remand)*, ___ Mich App at ___; slip op at 2.

Finally, defendant argues that the 19-year minimum sentence constituted cruel and/or unusual punishment under the state and federal constitutions because the sentence was for a mere strict liability offense, OWRLCD. We agree that OWRLCD constitutes a strict liability offense. See *People v Pace*, 311 Mich App 1, 9; 874 NW2d 164 (2015) ("the violation of a traffic law is typically a strict liability offense"; "we can infer that the Legislature intended to dispense with the

---

[6] At the sentencing hearing, the trial court expressed:

> You don't think that I don't think about the fact that if I hadn't given you SAI, if I hadn't given you Swift and Sure, if I would have just sent you to prison this woman would still be alive because I think about that. You should think about that.

criminal intent element of committing a moving violation causing serious impairment of a body function, and that it intended to make such a violation a strict liability offense"); see also MCL 257.904(4); M Crim JI 15.16a.  Nevertheless, we reject defendant's argument because it fails to appreciate, as we emphasized earlier, that defendant alone was at fault and caused the death of an individual because he decided to drive in violation of the law.  Defendant's argument also fails to appreciate that it was defendant's extensive criminal record and his repeated failures to abide by the law and the rules of parole and probation that drove the 19-year minimum sentence.  For the reasons discussed earlier, we concluded that defendant's sentence was proportionate, and proportionate sentences do not constitute cruel or unusual punishment.  *People v Malone*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 331903); slip op at 6-7; *People v McFarlane*, 325 Mich App 507, 538; 926 NW2d 339 (2018); *People v Bowling*, 299 Mich App 552, 558; 830 NW2d 800 (2013); *People v Powell*, 278 Mich App 318, 323; 750 NW2d 607 (2008).  Accordingly, we reject defendant's argument.

We affirm.

/s/ Michael J. Kelly
/s/ Jane E. Markey
/s/ Thomas C. Cameron